[No. A045156. First Dist., Div. Three. Mar. 27, 1991.]

JOHN D. PERZIK, Plaintiff and Appellant, v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant
and Respondent.

**COUNSEL**

Carey & Carey, Robert E. Carey, Jr., and Jerry Y. Fong for Plaintiff and Appellant.

Archer, McComas & Lageson, H. Paul Breslin, Robert L. Sallander, Jr., and Eugene C. Blackard, Jr., for Defendant and Respondent.

OPINION

**MERRILL, J.**—At issue in this case are the terms of an insurance policy purchased by appellant John D. Perzik, M.D., from respondent St. Paul Fire & Marine Insurance Company, and the extent of respondent's duty to defend appellant in the context of a federal criminal grand jury investigation and subsequent proceedings.

### Factual and Procedural Background

In 1986, appellant Perzik was subpoenaed to testify before a federal grand jury concerning his alleged illegal dispensing of steroids and other drugs. As a result of this grand jury testimony and investigation, appellant was indicted in federal court on charges of illegally dispensing steroids and other drugs. A federal criminal complaint was subsequently brought against appellant on these charges. No civil action for damages has been filed.

Appellant tendered the defense of both the grand jury investigation and the federal criminal charges to respondent. Respondent declined to pay the costs of appellant's legal defense in the federal criminal investigation and action.

On December 4, 1987, appellant filed the instant declaratory relief action against respondent, seeking a determination that respondent has the duty to indemnify appellant for any and all "damages" arising from the federal investigation and criminal action, and the duty to defend appellant in those same proceedings. Respondent filed a motion for summary judgment, which was granted. Judgment was entered, and this appeal followed.

### Respondent's Duty to Defend

The insurance policy issued by respondent was entitled "Physicians' Professional Liability Protection" (the Policy); it had an effective date of May 1, 1985. The Policy, which states that it is written "in plain, easy-to-understand English," sets forth its general statement of coverage as follows: "This agreement provides protection against professional liability claims which might be brought against you in your practice as a physician or surgeon." "Individual coverage" is defined as follows: "Your professional liability protection covers you for damages resulting from: 1. Your providing or withholding of professional services." Under the heading "Additional benefits," the Policy provides: "We'll defend any suit brought against you for damages covered under this agreement. We'll do this even if the suit is groundless or fraudulent. We have the right to investigate, negotiate and settle any suit or claim if we think that's appropriate. [¶] We'll pay all costs

of defending a suit, including interest on that part of any judgment that doesn't exceed the limit of your coverage."

Appellant contends that under the terms of this Policy and the liberal standard governing an insurer's duty to defend, respondent was obligated to provide legal representation to him in both the federal grand jury investigation and the subsequent criminal proceedings. We disagree.

Under California law, an insurer's duty to defend is separate from and broader than its duty to indemnify; the duty to defend is measured by the reasonable expectations of the insured; and an insurer must defend a lawsuit as soon as it learns of facts that create a *potential* for coverage under its insurance policy. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276-277 [54 Cal.Rptr. 104, 419 P.2d 168]; *CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 605-606 [222 Cal.Rptr. 276]; *Ohio Casualty Ins. Co.* v. *Hubbard* (1984) 162 Cal.App.3d 939, 943-944 [208 Cal.Rptr. 806]; *Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 217 [169 Cal.Rptr. 278]; *State Farm Mut. Auto. Ins. Co.* v. *Flynt* (1971) 17 Cal.App.3d 538, 548 [95 Cal.Rptr. 296].) Nevertheless, the corollary to this principle is that where there is *no possibility* of coverage, there is no duty to defend. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at pp. 276-277; *State Farm Fire & Cas. Co.* v. *Superior Court* (1987) 191 Cal.App.3d 74, 77 [236 Cal.Rptr. 216]; *Jaffe* v. *Cranford Ins. Co.* (1985) 168 Cal.App.3d 930, 934 [214 Cal.Rptr. 567] (hereafter *Jaffe*).) Here, there was no such potential for coverage.

Under its express terms, the Policy "provides protection against *professional liability claims* which might be brought against [appellant] in [his] practice as a physician or surgeon." (Italics added.) It is clear to us that the federal criminal investigation and prosecution at issue here do not constitute covered "professional liability claims," no matter how broadly that phrase may be interpreted. Professional liability, in common parlance, refers to malpractice liability; it is quite distinct from criminal liability. Appellant could not reasonably have understood the phrase to include criminal sanctions.

Moreover, the Policy coverage provisions specify that appellant's "professional liability protection covers [him] for *damages* resulting from . . . [his] providing or withholding of professional services." (Italics added.) It is now "well established that an insurer is not required to provide a criminal defense to an insured under a liability policy obligating the insurer to pay 'damages' for which the insured is found liable." (*Stein* v. *International Ins. Co.* (1990) 217 Cal.App.3d 609, 614 [266 Cal.Rptr. 72]; see also *State Farm Fire & Cas. Co.* v. *Superior Court, supra,* 191 Cal.App.3d at p. 77.) An

insurer is not obligated to defend a suit which does not seek the recovery of damages covered by the claimant's policy. (*Giddings* v. *Industrial Indemnity Co.*, *supra*, 112 Cal.App.3d at pp. 219-220.) That is the case here, since the federal criminal proceedings against appellant do not seek any sanctions which respondent's Policy could reasonably be construed to cover. (*State Farm Fire & Cas. Co.* v. *Superior Court*, *supra*, 191 Cal.App.3d at p. 77.)[1]

The clause of the Policy which deals specifically with respondent's duty to defend is even more clearly limited in its scope. It states that respondent will "defend any *suit* brought against [appellant] for *damages* covered under this agreement[,] . . . even if the *suit* is groundless or fraudulent." (Italics added.) A suit for damages unambiguously refers to civil litigation of the kind the Policy is expressly designed to cover; that is, lawsuits alleging "professional liability claims." As stated by the Third Appellate District: "Where the language of an insurance policy plainly obligates an insurer to *defend an action for damages* against the insured, the insurer has no obligation to defend an insured in criminal or administrative proceedings where damages are not sought. [Citations.] . . . [¶] . . . The obligation to defend, which is co-extensive with coverage under the policy, is plainly limited to actions seeking damages." (*United Pacific Ins. Co.* v. *Hall* (1988) 199 Cal.App.3d 551, 556 [245 Cal.Rptr. 99]; see also *State Farm Fire & Cas. Co.* v. *Superior Court*, *supra*, 191 Cal.App.3d at p. 77; *Jaffe*, *supra*, 168 Cal.App.3d at pp. 933-936.)

It is true, as appellant points out, that this section of the Policy setting forth the duty to defend is entitled "Additional benefits," and provides that "[a]ll of the following are *in addition to* the limits of your coverage." (Italics added.) On the basis of this language, appellant urges that the provision for

[1] As discussed in the leading case of *Jaffe*, *supra*, 168 Cal.App.3d 930: "[T]he duty to defend derives from the insurer's coverage obligations assumed under the insurance contract. That is only to say where there is *no potential* for coverage, there is no duty to defend. [Citation.] In the present case, the outcome of Jaffe's criminal case could not result in damages payable under the policy since neither imprisonment nor a fine constitutes 'damages' for insurance purposes. . . .

". . . 'Damages' describes a payment made to compensate a party for injuries suffered. The remedy [sought against the insured in *Jaffe*] is more properly characterized as restitutionary rather than compensatory in nature. The defendant is asked to return something he wrongfully received; he is not asked to compensate the plaintiff for injury suffered as a result of his conduct. At least absent demonstrably unusual circumstances, we have doubts whether an insurance policy which purported to insure a party against payments of a restitutionary nature would comport with public policy. Although the concept of 'restitution' may have a broader meaning in other contexts, we limit our reference to it here to situations in which the defendant is required to restore to the plaintiff that which was wrongfully acquired. In any event, Jaffe's policy is limited to coverage for 'damages' awarded against him. We have no trouble concluding that payments of a restitutionary nature, if sought by the state . . . , are not 'damages' within the meaning of Jaffe's policy." (*Id.*, at pp. 934-935, fns. omitted.)

defense of a third party suit for damages is merely an addition to the Policy's basic coverage, and that nothing in the language thereof can be used to interpret, modify or limit the scope of the original coverage provision. Even if we accept this interpretation, it does not support appellant's argument. The fact that the phrase "suit for damages" is absent from the coverage provision does not mean that the "professional liability claims" which this Policy is meant to cover must be expansively interpreted to include criminal indictments. Such an interpretation of the Policy's language and scope would be contrary to reason, logic, and precedent.

We apply the language of the court in *Jaffe, supra*, 168 Cal.App.3d 930, to the facts of this case: "In effect, [appellant] attempts to convert his malpractice policy into an insurance policy for comprehensive legal services. The policy clearly indicates this was not the intent of the parties at the time the insurance contract was entered into. Read in proper context, [the "Additional benefits" clause in the Policy] does no more than incorporate the *Gray* v. *Zurich*[, *supra*, 65 Cal.2d 263,] duty-to-defend concept into the policy. As we have explained, that concept applies only where there is potential coverage under the policy. We will not rewrite this policy to fasten on the insurer liability it did not assume and which the insured could not reasonably expect existed." (*Jaffe, supra*, 168 Cal.App.3d at p. 936, citation and fn. omitted.)

*Sanctions*

■ Respondent claims that appellant's appeal is frivolous and was taken solely for purposes of delay, and requests that we make an award of attorney fees and expenses as sanctions against appellant.

We decline respondent's request. Although, in our opinion, the case law is clearly in support of respondent's position and the trial court's grant of summary judgment, we do not thereby conclude that the appeal was frivolous. The provisions of the Policy itself are not identical to those at issue in the controlling cases. The application of the relevant case authority to this Policy in a constantly evolving area of the law is a legitimate issue to be raised on appeal.

Moreover, it cannot be said that appellant brought this appeal solely for purposes of delay. It is appellant, not respondent, who seeks relief in the underlying action; any delay in the outcome of this litigation would not inure to his benefit. Obviously, appellant's objective in bringing this appeal was to overturn the trial court's summary judgment and continue with the lawsuit, with the aim of obtaining indemnification from respondent at its conclusion. We do not view this as a frivolous goal.

*Disposition*

The judgment is affirmed.

White, P. J., and Strankman, J., concurred.