**FIRST PACIFIC NETWORKS, INC., Plaintiff,**

v.

**ATLANTIC MUTUAL INSURANCE COMPANY, Defendant.**

No. C–94–2851 DLJ.

United States District Court, N.D. California.

May 10, 1995.

language contained therein cannot be said to have modified the at-will relationship.

**ORDER**

JENSEN, District Judge.

On April 19, 1995, the Court heard arguments on plaintiff's and defendant's motions for summary adjudication of two issues: (1) whether defendant Atlantic Mutual Ins. Co. ("Atlantic Mutual") had a duty to defend plaintiff First Pacific Networks, Inc. ("FPN") in Phase I of the underlying lawsuit, *Arthur Bass v. First Pacific Networks* (the "Bass lawsuit"); and (2) whether Atlantic Mutual breached that duty. Darryl M. Woo of Sheppard, Mullin, Richter & Hampton appeared on behalf of FPN. Gary R. Selvin of Larson & Burnham appeared on behalf of Atlantic Mutual. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS plaintiff's motion for partial summary judgment.

This case is about whether an insurance company, Atlantic Mutual, breached its duty to defend. Atlantic Mutual issued a policy covering various torts, including defamation, by FPN. FPN was sued in the Bass lawsuit by a past chairman, Arthur Bass, for conversion of stock and defamation. FPN counterclaimed that Bass acquired the stock by "extortion" or "duress." Judge Ware, presiding over the Bass lawsuit bifurcated the action into two Phases. The First Phase was to determine who owned the stock. The Second Phase was to determine the amount of damages, if any, due to Bass. Atlantic Mutual refused to defend FPN in the First Phase on the grounds that its policy only covered suits for damages. FPN sued Atlantic Mutual for breach of the duty to defend. Both parties move for summary judgment on the issue of whether Atlantic Mutual breached its duty to defend.

## I. BACKGROUND

### A. *Factual Background*

Atlantic Mutual issued an insurance policy covering torts, including defamation by FPN. In August 1992 Arthur C. Bass, a former director and Chairman of FPN, filed a complaint against FPN and a Mr. Gibby, FPN's then President. This complaint alleged, among other things, that FPN and its officers had converted certain shares of FPN

Darryl M. Woo, Sheppard, Mullin, Richter & Hampton, San Francisco, CA, for plaintiff.

Trelawney K. James–Riechert, and Gary R. Selvin, Larson and Burnham, Oakland, CA, for defendant.

stock owned by Bass. This complaint did not allege defamation or any other causes of action that were covered by Atlantic Mutual's policy.

In October 1992, Bass amended the complaint to allege defamation against Gibby. Though FPN was not named as a defendant to the defamation cause of action, one of the allegations in the complaint alleged that some of the defamatory statements were made "at a meeting of the Board of Directors of FPN held at FPN's offices."

On November 12, 1992, FPN tendered the defense and indemnity of the Bass lawsuit, including the defamation claim, to Atlantic Mutual under the insurance policy. Atlantic Mutual did not respond until February 18, 1993.

On January 20, 1993, FPN filed a counterclaim in the Bass lawsuit against Bass for cancellation of the shares of Bass's FPN stock. FPN alleged that Bass had procured such stock from the company by duress and extortion, and for no consideration or legally inadequate consideration, and thus that the issuance of the shares was void. FPN's answer to Bass's First Amended Complaint included these same allegations as affirmative defenses.

On February 18, 1993, Atlantic Mutual accepted the defense of the Bass lawsuit by hiring the law firm, Ericksen, Arbuthnot to "protect [the] rights and interests [of FPN] with respect to [the Bass] lawsuit." FPN responded in a letter that it would not be happy with substituting Ericksen for its present firm.

On March 11, 1993, Judge James Ware, presiding over *Arthur C. Bass v. First Pacific Networks, Inc.*, filed an order bifurcating the action as follows:

> This action is hereby ORDERED to be bifurcated into two phases. The 'First Phase' shall consist exclusively of the adjudication of the controversy regarding the right to ownership of the stock represented by [the] stock certificates ...
>
> The 'Second Phase' shall consist of the claims for damages brought by the Plaintiff Bass against each of the Defendants in this action. Apart from the motions cur-

rently pending and submitted as of February 26, 1993, discovery, motion practice and all other pretrial activity relating to the Second Phase is hereby STAYED, pending further order of this court after completion of trial or settlement of the First Phase.

On April 9, 1993, Atlantic Mutual denied that the Bass suit fell within the policy and refused to undertake the defense.

On May 4, 1993, Atlantic Mutual asked FPN for information as to the alleged defamation.

On May 10, 1993, FPN responded to Atlantic Mutual's request for information as to the defamation by stating that since the alleged defamation never occurred, they could not give any information about it.

Commencing on April 27, 1993, Phase I of the Bass lawsuit was tried before Judge Ware. On June 30, 1993, Judge Ware filed an Interlocutory Judgment in favor of Bass and against FPN. On September 24, 1993, at a case management conference, Judge Ware set the Second Phase of the trial to commence with jury selection on May 16, 1994.

On November 12, 1993, Atlantic Mutual accepted defense of the defamation claim with respect to Gibby.

On March 11, 1994, FPN was added as a defendant to the defamation claim in the Bass lawsuit.

On March 17, 1994, FPN settled the Bass lawsuit. Judge Ware approved the settlement and entered the Court's Final Judgment and Order of Dismissal on April 4, 1994.

Atlantic Mutual issued three checks as follows: $2,667.13 to local counsel in Memphis on June 29, 1994; $355,082.04 to FPN on July 13, 1994, which was received on or about July 18, 1994, by FPN; and $299,105.19 to St. Paul's (a co-insurer which paid for part of the fees incurred in the Bass lawsuit) on July 13, 1994. Approximately $200,000 of fees are still in dispute.

## B. Procedural History

On July 18, 1994, FPN filed the present lawsuit, alleging, among other things, bad faith breach of the duty to defend. FPN brings this motion for a determination that (1) Atlantic Mutual had a duty under its policy to provide a defense or pay for the defense of FPN and its officers with respect to the Bass Lawsuit; (2) Atlantic Mutual's duty to defend included a duty to provide a defense of all claims in the Bass lawsuit, including the trial of the bifurcated counterclaim and affirmative defense which sought to establish the truth of the alleged defamatory statements that Bass "extorted" or "stole" the FPN stock; and (3) Atlantic Mutual breached its duty to defend FPN under the insurance policy by (a) failing to provide a defense during the pendency of the Bass lawsuit; and (b) failing to pay any portion of FPN's attorney's fees and costs in the Bass Lawsuit during the pendency thereof.

Atlantic Mutual moves for a determination that (1) it did not breach its duty to defend in the Bass lawsuit and (2) it had a right to allocate the defense fees in the Bass lawsuit and had no obligation to pay for discovery or trial of the First Phase.

## C. Legal Standard: Cross Motions for Summary Judgment

Rule 56 governs motions for summary judgment. This rule states that summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(e).

In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987); (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d 1100, 1103–04 (9th Cir.), cert. denied, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986)) (emphasis in original).

■ On cross motions for summary judgment, the burdens faced by the opposing parties vary with the burden of proof they will face at trial. To succeed on summary judgment plaintiff must prove each element essential of the claims upon which it seeks judgment by undisputed facts. Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986) (party with burden "must establish beyond peradventure all of the essential elements ..." (emphasis in original)). In an influential article, Judge Schwarzer has phrased plaintiff's as follow: "Where the moving party has the burden [of proof at trial ...,] his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487–488 (1984).

In contrast, defendant's motion for summary judgment faces a lighter burden. Because the defendant does not bear the burden of proof at trial, the defendant need only point to the insufficiency of the plaintiff's evidence to shift the burden to the plaintiff to raise genuine issues of fact as to each claim by substantial evidence. T.W. Electric Service, Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir.1987); citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1983); Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d 1100, 1103–04 (9th Cir.), cert. denied, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986). If plaintiff fails to raise a genuine issue of fact, then summary adjudication in favor of the defendant will be granted.

■ When judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw

all inferences in a light most favorable to the nonmoving party. *T.W. Electric*, 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir.1991). Regardless of who is the moving party, each party must "establish the existence of the elements essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 321, 106 S.Ct. at 2552. The standard for judging a motion for summary judgment is the same standard used to judge a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

 In meeting their burdens of proof, each party must come forward with admissible evidence. Fed.R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. Niagara Falls*, 754 F.2d 49 (2nd Cir.1985); *Thornhill Publishing Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979). Hearsay statements found in affidavits are inadmissible. *See, e.g., Fong v. American Airlines, Inc.*, 626 F.2d 759, 762–63 (9th Cir.1980). Plaintiffs must ultimately persuade the Court in opposing summary judgment that they will have sufficient admissible evidence to justify going to trial.

## II. ARGUMENTS

### A. Broad Duty to Defend

"Under California law, an insurer's duty to defend is separate from and broader than its duty to indemnify; the duty to defend is measured by the reasonable expectations of the insured; and an insurer must defend a lawsuit as soon as it learns of facts that create a *potential* for coverage under its insurance policy." *Perzik v. St. Paul Fire & Marine Ins. Co.*, 228 Cal.App.3d 1273, 1276, 279 Cal.Rptr. 498 (1991) (*emphasis in origi-nal*) (citing *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 276–77, 54 Cal.Rptr. 104, 419 P.2d 168 (1966)); *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993) ("the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*" (*emphasis in original*) ).

### B. Duty to Defend All Parts of the Action

 "Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993) (*citing Hogan v. Midland National Ins. Co.*, 3 Cal.3d 553, 564, 91 Cal.Rptr. 153, 476 P.2d 825 (1970)). In *Horace Mann*, the plaintiff, a teacher, was the defendant in an underlying case for child molestation and nonsexual negligent misconduct with a student of his. The insurance company filed a declaratory relief action and moved for summary judgment on the basis that it was not obligated to defend the teacher in the underlying because child molestation is inherently, wilfully unlawful, and therefore not covered by the policy as a matter of law. The California Supreme Court held that the insurance company had a duty to defend, because some of the claims for negligent nonsexual misconduct might have been covered by the policy. *Horace Mann*, 4 Cal.4th at 1082–83, 17 Cal.Rptr.2d 210, 846 P.2d 792 (insurance company did not seek an allocation of costs between covered and noncovered claims).

"In its pragmatic aspect, any precise allocation of expenses ... would be extremely difficult and, if ever feasible, could be made only if the insurer produces undeniable evidence of the allocability of specific expenses; the insurer having breached its contract to defend should be charged with a heavy burden of proof of even partial freedom from liability for harm to the insured which ostensibly flowed from the breach." *Hogan v. Midland National Ins. Co.*, 3 Cal.3d at 564,

91 Cal.Rptr. 153, 476 P.2d 825. In *Hogan* the defendant in the underlying case sold a commercial lumber saw to the underlying plaintiff. The saw failed to work properly. The defendant's insurance company, Midland National, refused to defend the case, arguing that the policy covered only accidents. Judgment was for plaintiff.

The defendant assigned its action against Midland National for failure to defend to Hogan. Hogan obtained a judgment against Midland National for the amount of the underlying judgment plus attorneys' fees for the underlying case. Midland sought a reversal as to some of the damages in the underlying case and an allocation between the attorneys' fees attributable to the covered and noncovered damages. The California Supreme Court held that some of the damages in the underlying suit were not due to accident and were therefore not covered, but declined to allocate the attorneys' fees between covered and noncovered damages.

In the present case, Atlantic Mutual simply refused to defend, without seeking a court declaration that the policy did not cover the first stage of the Bass lawsuit. Moreover, it is not clear that the first stage of the Bass lawsuit was not covered in the policy. Although the Court's holding in *Hogan* explicitly states that it applies to those specific circumstances, it is also applicable to the present case. Atlantic Mutual does not present "undeniable evidence of the allocability of specific" attorney's fees. *Id.*

## C. *Whether Bifurcation of the Action Relieved Atlantic Mutual of the Duty to Defend the First Phase*

Atlantic Mutual relies on *California Union Ins. Co. v. Club Aquarius,* 113 Cal.App.3d 243, 246, 169 Cal.Rptr. 685 (1980), for the proposition that where there is a bifurcated trial and one phase does not pertain to a covered risk, there is no obligation to pay for any defense related to that phase. This may be true, but it was far from clear that the First Phase did not pertain to a covered risk. The opposite is true. In *Club Aquarius,* the trial was bifurcated into liability and damages phases in a suit for copyright infringement and unfair competition. The insurance

company insured damage caused by two publications of the defendant in the underlying case. In the liability phase the court found that neither of the covered publications was in violation of the law. The insurance company was therefore excused from defending the damage phase, which was based on noncovered publications. *Id.*

This does not help Atlantic Mutual, because the First Phase of the Bass trial involved liability. If FPN had won in this phase, that might have established a defense to the defamation cause of action. Even construing Judge Ware's bifurcation order strictly and putting aside the actual breadth of the evidence at the First Phase, it is more likely that Bass stole the shares or acquired them by duress if he did not rightfully own them. Thus, the First Phase of the Bass trial did pertain to a covered risk. This becomes more obvious when one considers the actual evidence at trial. The truth of the alleged defamatory statements was central to the trial of the First Phase.

Atlantic Mutual cites several cases that held that the insurance company did not breach the duty to defend by refusing to appear in proceedings related to the covered cases. *Perzik v. St. Paul Fire & Marine Ins. Co.,* 228 Cal.App.3d 1273, 1275–76, 279 Cal.Rptr. 498 (1991) (no duty of medical malpractice insurer to defend in criminal case and grand jury hearing regarding illegal distribution of steroids); *Stein v. International Ins. Co.,* 217 Cal.App.3d 609, 614–15, 266 Cal.Rptr. 72 (1990) (professional liability insurer not required to pay for criminal defense of attorney in criminal case); *United Pacific Insurance Company v. Hall,* 199 Cal. App.3d 551, 556, 245 Cal.Rptr. 99 (1988) (home owners' insurer not required to pay for representation of minor in administrative juvenile proceeding regarding arson of a school, even though same witnesses also appeared in civil suit for damages); *Jaffe v. Cranford Ins. Co.,* 168 Cal.App.3d 930, 933, 214 Cal.Rptr. 567 (1985) (no duty of malpractice insurer to defend psychiatrist in criminal fraud and theft case regarding Medi–Cal payments). None of these cases is applicable. They all involve separate proceedings from the covered case. Atlantic Mutual re-

fused to defend the first phase of a trial, the second phase of which it had a duty to defend.

**D. *Breach of the Duty to Defend Cannot Be Cured After the Fact***

■ Atlantic Mutual contends that it did not breach the duty to defend, because it paid FPN $355,082.04 on July 13, 1994. The case had already settled by that time. As FPN indicates, this argument addresses the issue of damages, not whether there was a breach, which is the subject of these motions.

### III. CONCLUSION

The Court hereby rules that:

1. Accordingly, the plaintiff's motion for partial summary judgment is GRANTED as follows:

a. Atlantic Mutual had a duty under its policy to provide a defense or pay for the defense of FPN and its officers with respect to the Bass Lawsuit;

b. Atlantic Mutual's duty to defend included a duty to provide a defense of all claims in the Bass lawsuit, including the First Phase of the bifurcated action; and

c. Atlantic Mutual breached its duty to defend FPN under the insurance policy by (a) failing to provide a defense during the pendency of the Bass lawsuit; and (b) failing to pay any portion of FPN's attorney's fees and costs in the Bass Lawsuit during the pendency thereof.

2. The defendant's motion for partial summary judgment is DENIED.

IT IS SO ORDERED.