119 F.3d 1411
 97 Cal. Daily Op. Serv. 5689, 97 Daily Journal
D.A.R. 9182
Gregory S. BODELL, Plaintiff-Counter-Defendant-Appellant,
v.
WALBROOK INSURANCE COMPANY, et al.,
Defendants-Counter-Claimants-Appellees.
 No. 94-56708.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 9, 1996.
Decided July 17, 1997.
 
 Henry D. Gradstein, Gradstein, Luskin & Van Dalsem, Los Angeles, CA, for Plaintiff-Counter-Defendant-Appellant.
 Charles A. Bird, Luce, Forward, Hamilton & Scripps, San Diego, CA; Andrew J. Waxler, Luce, Forward, Hamilton & Scripps, Los Angeles, CA; Sara A. Culp, Adams, Duque & Hazeltine, Los Angeles, CA, for Defendants-Counter-Claimants-Appellees.
 Appeal from the United States District Court for the Central District of California; James M. Ideman, District Judge, Presiding. D.C. No. CV-90-01513-JMI.
 Before: REINHARDT, KOZINSKI, and HAWKINS, Circuit Judges.
 MICHAEL DALY HAWKINS, Circuit Judge.
 
 
 1
 We consider here a question of first impression in this Circuit: whether an insurance policy promising to provide representation in "any proceeding or suit brought by any governmental regulatory agency seeking non-pecuniary relief" obligates the insurer to provide representation during an investigation by agents of the United States Postal Inspection Service ("the Postal Inspection Service") into allegations of mail fraud on the insured's part. Under the particular wording of the policies at issue, we hold that the insurers here made a promise they are obligated to keep.
 
 
 2
 Plaintiff Gregory S. Bodell ("Bodell"), an attorney, was an insured under two claims-made professional liability insurance policies issued by defendants, Walbrook Insurance Company, et al. ("the carriers"). Bodell brought this action seeking to compel the carriers to pay attorneys fees and costs incurred as the result of a federal investigation into events arising out of his actions and activities as a practicing lawyer. The investigation ultimately matured into a criminal charge to which he pled guilty.
 
 
 3
 The district court granted summary judgment in the carriers' favor. We have jurisdiction pursuant to 28 U.S.C. § 1291. Reviewing the district court's grant of summary judgment de novo, Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), we reverse and remand to the district court for entry of judgment in Bodell's favor.
 
 BACKGROUND
 
 4
 In late 1988, agents of the Postal Inspection Service began an investigation focusing on a network of Southern California lawyers who, it was alleged, had used the U.S. mails to engage in a scheme to defraud insurance companies by needlessly and intentionally expanding and prolonging personal-injury litigation in order to collect higher fees.
 
 
 5
 Bodell was notified that he was a target of this investigation and he promptly requested that the carriers provide him with representation. The carriers refused and Bodell brought this action seeking a declaration that the carriers were obligated to defend him.
 
 
 6
 Shortly after Bodell moved for summary judgment, a federal grand jury handed up a criminal indictment against him, his direct supervisor, and others. Bodell subsequently cooperated with the federal government and entered a plea of guilty to a single count of aiding and abetting mail fraud.[1]
 
 
 7
 The carriers then counterclaimed against Bodell in the civil action, seeking rescission of the policies. The district court denied Bodell's motion for summary judgment and sua sponte granted summary judgment in favor of the carriers. Bodell appealed. Another panel of this court dismissed the appeal for lack of jurisdiction, explaining that the order was not a final decision within the meaning of 28 U.S.C. § 1291 because it did not dispose of the counterclaims and the district court did not enter judgment as to all the parties.
 
 
 8
 On remand, additional counterclaims and several cross-claims were filed and new parties were added to the suit. The district court thereafter granted summary judgment on the carriers' counterclaims on grounds identical to those supporting its earlier grant of summary judgment against Bodell. Final judgment was entered on November 9, 1994, and Bodell timely appealed.
 
 ANALYSIS
 
 9
 We are guided in our approach by California law, which teaches that insurance policies are to be broadly construed to afford the greatest possible protection to the insured. State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal.3d 94, 109 Cal.Rptr. 811, 816, 514 P.2d 123, 128 (1973). "The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert." Crane v. State Farm Fire & Cas. Co., 5 Cal.3d 112, 95 Cal.Rptr. 513, 514, 485 P.2d 1129, 1130 (1971). If any reasonable interpretation of the policy would result in coverage, a court must find coverage even if other reasonable interpretations would preclude coverage. State Farm Mut. Auto. Ins. Co. v. Jacober, 10 Cal.3d 193, 110 Cal.Rptr. 1, 2, 514 P.2d 953, 954 (1973).
 
 
 10
 The two policies at issue contain identical relevant provisions. The carriers agree to pay "all Claim expenses and all sums that the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured ... by reason of any act, error or omission in Professional Services rendered or which should have been rendered by the Insured." "Claim" is defined in the policies as "a demand received by the Insured for money or services," and "Damages" is defined as "a monetary judgment, award or settlement and includes punitive damages where deemed insurable by law." It is conceded that the proceedings at issue did not involve a demand for money or services and that Bodell did not become legally obligated to pay a monetary judgment, award or settlement within the meaning of the policies. See Jaffe v. Cranford Ins. Co., 168 Cal.App.3d 930, 214 Cal.Rptr. 567, 570 (1985) ("[N]either imprisonment nor a fine constitutes 'damages' for insurance purposes.").
 
 
 11
 This does not end our inquiry. Both policies also provide:
 
 
 12
 With respect to the insurance afforded by this policy, the Company shall defend any Claim against the Insured seeking damages to which this insurance applies even if any of the allegations of the Claim are groundless, false or fraudulent. The Company shall also defend any proceeding or suit brought by any governmental regulatory agency seeking non-pecuniary relief and any proceeding or suit seeking declaratory or injunctive relief except when brought by the Company.
 
 
 13
 (emphasis added). Thus, it is clear that the policies provide a defense even when the insured could not possibly be held liable for damages within the meaning of the policy.[2] Consequently, the resolution of this appeal depends on whether the Postal Inspection Service investigation and subsequent grand jury proceedings can reasonably be considered a "proceeding or suit brought by any governmental regulatory agency seeking non-pecuniary relief."
 
 1. Governmental Regulatory Agency
 
 14
 Is it reasonable for an insured to believe the proceedings in this case were brought by a "governmental regulatory agency"? The United States Postal Service ("the Postal Service") is charged with the responsibility of providing for "the collection, handling, transportation, delivery, forwarding, returning, and holding of mail, and for the disposition of undeliverable mail." 39 U.S.C. § 404(a)(1). To carry out that responsibility, the Postal Service is entrusted with the authority to "adopt, amend, and repeal such rules and regulations as it deems necessary to accomplish the objectives of this title." 39 U.S.C. § 401(2).
 
 
 15
 Under the Private Express Statutes ("PES"), the Postal Service exercises a monopoly over the carriage of letters in and from the United States. Air Courier Conference v. American Postal Workers Union, 498 U.S. 517, 519, 111 S.Ct. 913, 915, 112 L.Ed.2d 1125 (1991) (citing 18 U.S.C. §§ 1693-1699 and 39 U.S.C. §§ 601-606). Accordingly, the regulations promulgated by the Postal Service establish standards for and govern the general public's use of the nation's mail delivery service. In addition, under 39 U.S.C. § 601(b), the Postal Service is authorized to suspend its monopoly "where the public interest requires." Pursuant to that authority and its general enumerated powers, the Postal Service has promulgated regulations governing mail delivery by private carriers. See 39 C.F.R. §§ 310-320. Because it regulates both the delivery of mail by private carriers and the general public's use of the mail delivery system, we conclude that it is not unreasonable to believe that the Postal Service is a regulatory agency.
 
 
 16
 Nor is our conclusion altered because the action was actually initiated by the Postal Inspection Service. The Postal Inspection Service is merely a branch of the Postal Service, charged generally with inspection and enforcement duties, with respect to laws "related to the Postal Service, the mails, other postal offenses and other laws of the United States." 39 C.F.R. § 224.3(b)(2). Hence, it is not unreasonable to believe that a proceeding initiated by the Postal Inspection Service is a proceeding brought by a "governmental regulatory agency."
 
 
 17
 The carriers contend that, in actuality, the proceedings here were not "brought" by the Postal Service or the Postal Inspection Service but by the United States Attorney. There is no question but that the United States Attorney is the gatekeeper of the federal grand jury. But a definition of "brought" that does not account for the work done by federal agents before a formal grand jury proceeding is undertaken is far too rigid for purposes of interpreting the policies in this case. In the civil context, that a complaint is drafted and filed by an attorney does not mean the action was not "brought" by the plaintiff as that term is commonly understood.
 
 
 18
 Our interpretation of "brought" is supported by the Fourth Circuit's decision in Joseph P. Bornstein, Ltd. v. National Union Fire Ins. Co., 828 F.2d 242, 245 (4th Cir.1987). In that case, plaintiff was insured under a professional liability policy. Plaintiff was informed of a grand jury investigation targeting him for alleged tax law violations, he was indicted, and the indictment was subsequently dismissed. At some point, plaintiff requested National Union to undertake his defense pursuant to a provision of his policy stating National Union would "defend any proceeding or suit brought by any government regulatory agency seeking nonpecuniary relief." Id. at 243. National Union refused, claiming that the grand jury could not be viewed as a governmental agency and its purpose was not to seek nonpecuniary relief. Bornstein argued that "the investigation of his alleged tax law violations was instituted and directed by the Internal Revenue Service and the Department of Justice, both of which are government agencies." Id. at 244. The Fourth Circuit found both constructions of the policy language to be reasonable and resolved the ambiguity in favor of Bornstein, the insured, in accordance with Virginia law, thereby finding a duty to defend.
 
 
 19
 Here, it appears that the Postal Inspection Service began a proceeding (an investigation) into activities (mail fraud) covered by the policies at issue. At some point, the Postal Inspection Service involved the United States Attorney's Office in the matter. An affidavit of the Assistant United States Attorney ("AUSA") assigned to the case seems to confirm this. In that affidavit, the AUSA asserts, "I am a duly appointed Assistant United States Attorney and have been assigned primary responsibility for assisting the United States Postal Inspector Service and the Federal Grand Jury in an investigation ...." (emphasis added). Later in the same affidavit the AUSA continues, "The failure to stay [civil] proceedings could seriously jeopardize the fact-finding process now being undertaken by the Federal Postal Inspector Service and the Federal Grand Jury." (emphasis added). While these characterizations by no means define the exact contours of the relationship between the Postal Inspection Service and the grand jury, we do find that this evidence supports the reasonableness of Bodell's reading of the policy. Therefore, we hold that, under the terms of the policy, the action was "brought" by a governmental regulatory agency.
 
 
 20
 Next, we must determine whether it is reasonable for an insured to believe that an investigation that matures into a federal grand jury proceeding is one brought for "non-pecuniary relief." A federal criminal investigation is just that: an investigation into facts. Simply because an AUSA is consulted or a grand jury convenes does not mean an indictment will inevitably result.[3] It does not become a criminal proceeding until and unless an indictment is returned. Even if it somehow were a criminal proceeding, a reasonable insured might still believe the proceeding to be non-pecuniary in nature.
 
 
 21
 Moreover, even if we were to consider a resulting criminal proceeding seeking restitution in addition to incarceration to be one for both pecuniary and non-pecuniary relief, the carriers' agreement to provide a defense for the non-pecuniary portion of the proceeding would have required them to provide a defense for the pecuniary portion of the proceeding as well. Cf. Horace Mann Ins. Co. v. Barbara B., 4 Cal.4th 1076, 17 Cal.Rptr.2d 210, 214, 846 P.2d 792, 796 (1993) ("Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim.").
 
 2. California Public Policy
 
 22
 The carriers contend that, even if the policy language could otherwise properly be interpreted as affording a defense, California law prohibits them from paying for representation in these circumstances.[4] The carriers cite California Insurance Code § 533.5(b):No policy of insurance shall provide, or be construed to provide, any duty to defend, as defined in subdivision (c), any claim in any criminal action or proceeding or in any action or proceeding brought pursuant to Chapter 5 (commencing with Section 17200) of Part 2 of, or Chapter 1 (commencing with Section 17500) of Part 3 of, Division 7 of the Business and Professions Code in which the recovery of a fine, penalty, or restitution is sought by the Attorney General, any district attorney, any city prosecutor, or any county counsel, notwithstanding whether the exclusion or exception regarding the duty to defend this type of claim is expressly stated in the policy.
 
 
 23
 Conspicuously absent from this list is any mention of any federal agency or officer, including the United States Attorney. Nonetheless, the carriers seek a reading of the statute that would prohibit an insurance policy from being construed as providing a duty to defend in any criminal action, even one brought by a federal official. A more natural reading of the statute is that the phrase "sought by the Attorney General, any district attorney, any city prosecutor, or any county counsel" modifies both "any criminal action or proceeding" and "any action or proceeding brought pursuant to [certain chapters of the Business and Professions Code]," and that the statute therefore only precludes the tender of a defense in all criminal actions and certain civil actions brought by state, county or city officials.
 
 
 24
 The legislative history of the statute supports this interpretation. The original version of § 533.5, formulated in 1988, applied to "any claim in any civil or criminal action or proceeding" brought by a state or local prosecutorial agency. Assembly Bill 3920, Reg. Sess. § 1 (Cal.1988).[5] The word "civil" precedes the word "criminal" and the "criminal" action referred to is clearly one brought by a state or local prosecutorial agency. Moreover, the legislative counsel's digest to the original version states: "This bill would prohibit insurance coverage or indemnity for the payment of any fine, penalty, or restitution in any civil or criminal action or proceeding brought by specified law enforcement entities...." Legislative Counsel's Digest, Assembly Bill 3920, Reg. Sess. (Cal.1988). According to Patrick Johnson, Chairman of the Assembly Committee on Finance and Insurance, when the law passed in 1988, the purpose of the bill was to prohibit insurance companies from indemnifying insureds against proceedings brought by the state and local regulatory agencies specified in the statute. California Legislature, Assembly Final History, Volume II, at 1 (1987-88).
 
 
 25
 In 1990, § 533.5 was revised. The statute was narrowed to apply just to specified sections of the Business and Professions Code.[6] Assembly Bill 3334, Reg. Sess. § 1 (Cal.1990). In the revised statute, the phrase "any claim in any criminal action or proceeding" was placed in front of the narrowed definition of the "civil" proceeding affected by the statute. This change in the order of the phrases referring to "criminal" and "civil" proceedings was not, as the carriers contend, an attempt to expand the "criminal" clause to include any actions by any prosecutorial agency. More likely, it was an effort to make the revised statute clear by not burying the "criminal" clause behind all the "Chapter" and "Section" information of the newly revised and narrowed "civil" clause. Again, the legislative history supports this interpretation: The heading above the statute restates the same "any civil or criminal action or proceeding" language found in the 1988 statute. Legislative Counsel's Digest, Assembly Bill 3334, Reg. Sess. (Cal.1990). Also worth noting is that when § 533.5 was revised yet again in 1991, the introduction of the bill was changed only by adding a reference to another local prosecutorial agency--the "county counsel." Legislative Counsel's Digest, S. 709, Reg. Sess (Cal.1991).
 
 
 26
 The carriers further claim that Bank of the West v. Superior Court, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 539, 833 P.2d 545, 546 (1992), effectively rejects Bodell's argument that the list of state and local regulatory agencies contained in § 533.5 is exhaustive. To the contrary, Bank of the West 's interpretation of § 533.5 is consistent with Bodell's:
 
 
 27
 As originally enacted, section 533.5 did not even refer to the [Unfair Business Practices Act]. Instead, it barred coverage in all civil and criminal actions, whatever the theory of liability, brought by the Attorney General, a district attorney, or a city prosecutor. In 1990, the Legislature limited the statute's reach to criminal actions and actions under the Unfair Business Practices Act.
 
 
 28
 Id. (citations omitted).
 
 
 29
 Not only does the statute not address a criminal proceeding brought by a federal official, but the California Supreme Court has recognized that "on its face this provision does not apply to relief sought by the federal government." AIU Ins. Co. v. Superior Court, 51 Cal.3d 807, 274 Cal.Rptr. 820, 842 n. 15, 799 P.2d 1253, 1275 n. 15 (1990). After AIU was decided, the legislature amended § 533.5 to include actions brought by "any county counsel" but failed to include actions brought by United States Attorneys. It is not our role to "fill in the gaps" when the legislature had so clear an opportunity to do so. We are judges, not legislators.
 
 
 30
 The carriers also contend that the policies at issue should not be interpreted as providing Bodell a defense in light of the California legislature's "numerous expressions of the strong public policy prohibiting insurance against the consequences of wilful and intentional wrongdoing." Specifically, the carriers rely on California Civil Code § 1668, which states that contracts that "have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Although § 1668 has been construed as prohibiting an insurer from indemnifying an insured for liability caused by his or her wilful misconduct, see Maxon v. Security Ins. Co., 214 Cal.App.2d 603, 29 Cal.Rptr. 586, 592 (1963), neither § 1668 nor the case law suggests that providing representation to an individual in a proceeding involving such conduct violates public policy. Gray v. Zurich Insurance Co., 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966), teaches that an insurer has a duty to defend in a civil assault action despite the contention that such a construction of the policy would violate California public policy. The California Supreme Court explained:
 
 
 31
 [Insurance Code § 533 and Civil Code § 1668] forbid only contracts which indemnify for "loss" or "responsibility" resulting from wilful wrong-doing. Here we deal with a contract which provides for legal defense against an action charging such conduct; the contract does not call for indemnification of the insured if the third party plaintiff prevails. In the second place, as we pointed out in Tomerlin v. Canadian Indemnity Co., 61 Cal.2d 638, 648, 39 Cal.Rptr. 731, 737, 394 P.2d 571, 577 (1964), the statutes "establish a public policy to prevent insurance coverage from encouragement of wilful tort." Thus Tomerlin held that if an insurer's obligation to pay a judgment based on wilful conduct results from an estoppel after the conduct, the obligation could not have previously encouraged the conduct. Similarly, the present contract does not offend the statute; a contract to defend an insured upon mere accusation of a wilful tort does not encourage such wilful conduct.
 
 
 32
 Id. 54 Cal.Rptr. at 113, 419 P.2d at 177. As in Gray, the contract in this case "does not offend the statute," for a contract to defend an insured in a criminal proceeding "does not encourage" criminal conduct. Id.
 
 CONCLUSION
 
 33
 We recognize that it is well established under California law that an insurer is not obligated to defend criminal proceedings when its policy covers only claims seeking "damages." See Jaffe, 214 Cal.Rptr. at 570. The policies in this case, however, differ significantly because they specifically provide a duty to defend not only when there is a claim for damages but also when a governmental regulatory agency institutes a proceeding seeking non-pecuniary relief.
 
 
 34
 We find a reasonable insured could believe that the policies in question provide representation in the context of an investigation and resulting grand jury proceeding brought by a branch of an agency with regulatory powers such as the United States Postal Service. A reasonable insured could also believe that a resulting proceeding (here, the grand jury proceeding) is "brought" by the Postal Service notwithstanding the somewhat obtuse and little understood relationship between an agency and the United States Attorney.[7] Finally, an agreement to defend under such circumstances is not violative of California law or policy. Consequently, the carriers had a duty to defend Bodell in these proceedings. Therefore, Bodell, not the carriers, is entitled to summary judgment, and upon remand the district court shall enter judgment in Bodell's favor both on his complaint and the carriers' counterclaims.
 
 
 35
 REVERSED AND REMANDED.
 
 
 36
 KOZINSKI, Circuit Judge, dissenting.
 
 
 37
 Appellant, a lawyer, was once convicted for helping bilk insurance companies out of attorney's fees. This time he gets away with it.
 
 
 38
 * My colleagues find there is coverage for attorney's fees incurred in criminal proceedings based on a clause in the policy where the insurance company promises to defend "any proceeding ... brought by any governmental regulatory agency seeking non-pecuniary relief." This clause covers defense costs when regulatory agencies, like the Securities and Exchange Commission, the Federal Trade Commission or the state bar, seek civil relief, such as an injunction, suspension of a license or disbarment. The proceedings the insurers were asked to defend-a grand jury investigation and subsequent criminal prosecution-were manifestly not "brought" by a "regulatory agency." They were brought by a federal grand jury and by the Attorney General acting through the United States Attorney. Not even appellant claims that the grand jury or the United States Attorney is a regulatory agency.
 
 
 39
 The majority nevertheless finds coverage on two grounds. First, my colleagues argue that the United States Postal Service's investigation was the proceeding brought by a governmental regulatory agency that the insurers should have defended. See maj. op. at 1415. While I have serious doubts whether an informal investigation constitutes a "proceeding" under the policy, the fact is that the insurers weren't asked to defend the Postal Service's investigation. Appellant demanded only that they defend the grand jury proceedings. In fact, neither of appellant's tender of defense letters, which contained almost identical language, even mentioned the Postal Service:
 
 
 40
 In particular, I have heard that I am a subject or target of a Grand Jury investigation by the United States Attorney for the Southern District of California relating to my alleged actions as an attorney. This is a proceeding by a governmental regulatory agency seeking non-pecuniary relief. Consequently, I request that the insurer immediately undertake my defense of this Grand Jury proceeding as required under the policy issued to me.
 
 
 41
 Letters from Gregory S. Bodell to Jardine, Emmett & Chandler Los Angeles Inc., Insur. Brokers, Dec. 14, 1989. Insurers cannot be faulted for failing to defend a proceeding they were never asked to defend. In any event, it's hard to imagine how the insurers could have helped Bodell defend against an investigation, or what expenses he could have incurred in connection therewith. Targets of investigations are notoriously passive and don't get to do anything unless they are interviewed.
 
 
 42
 Second, the majority views the grand jury proceeding and subsequent criminal prosecution as part of a regulatory enforcement proceeding; the Postal Service "brought" the criminal proceeding against appellant because its law enforcement unit, the Postal Inspection Service, initiated the investigation which led to the criminal charges. See maj. op. at 1418. Even assuming the United States Postal Service could be considered a regulatory agency-something I seriously doubt-the majority misconceives the role of such agencies in criminal prosecutions. While agencies may bring a host of civil and administrative proceedings, they can institute neither a grand jury investigation nor a criminal prosecution. A federal district judge must summon the grand jury, see Fed.R.Crim.P. 6(a)(1), but an empaneled grand jury is an independent body that does the bidding of no one. See Stirone v. United States, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960) (grand jury "act[s] independently of either prosecuting attorney or judge"); see also United States v. Williams, 504 U.S. 36, 47, 112 S.Ct. 1735, 1742, 118 L.Ed.2d 352 (1992) ("In fact the whole theory of [the grand jury's] function is that it belongs to no branch of the institutional Government...."). Although federal grand juries do rely on the United States Attorney for assistance, see 1 Charles Alan Wright, Federal Practice and Procedure § 101, at 199-201 (2d ed.1982), even the United States Attorney cannot force the grand jury to investigate anything or keep it from looking into whatever it pleases. And, once a federal grand jury decides to indict, only the Attorney General may bring the criminal charges to trial. See United States v. Cox, 342 F.2d 167, 190 (5th Cir.1965) (Wisdom, J., concurring) (en banc) ("The prosecution of offenses against the United States is an executive function within the exclusive prerogative of the Attorney General."); see also In re Subpoena of Persico, 522 F.2d 41, 54 (2d Cir.1975). Under Federal Rule of Criminal Procedure 7(c)(1), an indictment is invalid unless the United States Attorney-or other attorney for the government authorized by the Attorney General-signs it. See Fed.R.Crim.P. 7(c)(1); see also United States v. Singer, 660 F.2d 1295, 1302 (8th Cir.1981) (the signature requirement "is intended to show that the attorney for the government joins with the grand jury in instituting the proceeding" (citation omitted)).
 
 
 43
 Regulatory agencies that become aware of criminal misconduct may, of course, refer the matter to the United States Attorney for possible criminal prosecution. But so can any other person or entity, public or private, who learns of a federal crime. The agency can no more force the United States Attorney to bring a prosecution than can a private party. And, if a prosecution is brought, the United States Attorney no more represents the agency that conducted the investigation than he does a private party who is victimized by a crime. A criminal action vindicates the rights of the United States, not of any agency or party aggrieved by the misconduct.
 
 
 44
 The facts of this case make my point. The branch of the Postal Service involved here, the Postal Inspection Service, has no power to initiate any proceeding; it can only investigate wrongdoing. See, e.g., 39 C.F.R. § 224.3(b)(4) (authority to "[c]arry[ ] out investigations and present[ ] evidence to ... U.S. Attorneys ... in investigations of a criminal ... nature."). Of course, the Postal Inspection Service is part of the Postal Service which can "sue ... in its official name." 39 U.S.C. § 401(1). Had the Inspection Service turned over its information to the Postal Service's General Counsel, and had the General Counsel then brought a complaint against appellant seeking a cease and desist order from an administrative law judge, see, e.g., Silver v. United States Postal Service, 951 F.2d 1033, 1034-35 (9th Cir.1991), appellant's insurers may well have had a duty to defend. But here the Postal Service instituted no proceedings; instead, it turned over its information to the grand jury and the United States Attorney's office, which eventually brought criminal proceedings against appellant. Under the clear terms of the policy, these proceedings were not brought by the Postal Service or any other agency. No duty to defend was triggered.
 
 
 45
 The majority seems to argue that the Postal Service really did bring the grand jury investigation and criminal charges, because the United States Attorney was acting on behalf of the Postal Service-much like a lawyer representing a private party.[1] See maj. op. at 1414-15. This argument doesn't pass the snicker test. If a private party wants to bring suit and is turned away by a lawyer, it can find another lawyer or bring the case pro se. But if the United States Attorney refuses to prosecute, the complaining agency can't hire another lawyer to bring the criminal prosecution anyway. This is because a civil suit is brought by the aggrieved plaintiff even though a lawyer filed the suit; by contrast, "[t]he United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty." United States v. Hill, 953 F.2d 452, 458 (9th Cir.1991) (quoting Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), overruled on other grounds, Stirone, 361 U.S. at 215, 80 S.Ct. at 272). Unlike civil actions, criminal prosecutions cannot be brought-in any rational sense of the word-by anyone other than the sovereign. We need look no farther than the caption in a criminal case to know this is so: It doesn't read United States Postal Service v. Bodell; it reads United States of America v. Bodell. This is because a federal criminal prosecution "is a judicial proceeding in a federal court alleging violation of federal laws and is brought in the name of the United States as sovereign." United States v. Nixon, 418 U.S. 683, 694, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974).
 
 
 46
 Although Joseph P. Bornstein, Ltd. v. Nat. Union Fire Insur., 828 F.2d 242 (4th Cir.1987), resolves almost the same question presented here, the majority fails to mention the rationale employed by the Bornstein court. One reason is that Bornstein provides no analysis. Applying Virginia law, the court simply concludes that, because both parties had offered "reasonable, though conflicting, constructions of the relevant policy language," the policy was ambiguous and must be construed against the insurer. Id. at 245. Bornstein does not explain why it is reasonable to conclude that a grand jury investigation might be a proceeding brought by a regulatory agency. In any event, Bornstein 's method of analysis is flawed under California law. The mere fact that a policy provision is susceptible to two conflicting interpretations doesn't render it ambiguous. Instead, in determining whether a policy provision is ambiguous, California courts treat insurance contracts like ordinary contracts, focusing on the objectively reasonable expectations of the insured and considering the context in which the terms are used. See Bank of the West v. Superior Court of Contra Costa County, 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). "Only if th[e reasonable expectations] rule does not resolve the ambiguity do we then resolve it against the insurer." Id. at 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545.
 
 
 47
 Here, appellant offers an objectively unreasonable interpretation of the policy language. Perhaps the best evidence of the unreasonableness of appellant's interpretation is that it leads to absurd distinctions. For example, imagine an immigration lawyer who smuggles illegal aliens in hopes of representing them in their INS proceedings, but is caught and charged with violating 8 U.S.C. § 1324(a)(1). If he's caught by the Border Patrol, which is part of the INS, his defense costs would be covered because the subsequent criminal proceedings were initiated-at least tangentially-by an agency. But if he's caught by the FBI, he's not covered because the FBI isn't a regulatory agency, or part of one. It's inconceivable that any rational insured or insurer would have expected coverage to turn on such irrelevant distinctions. Therefore, unlike the Bornstein court, we cannot conclude under California law that the policy provision is ambiguous.
 
 II
 
 48
 Insuring criminal defense costs also violates the public policy of California; thus, if the policy said what the majority claims, it would be void. See Cal. Insur. Code § 533.5(b) & (d). Not only has the California Legislature specifically prohibited insurers from defending criminal proceedings, no California court has ever construed an insurance policy to cover criminal defenses, including federal criminal prosecutions. See, e.g., Perzik v. St. Paul Fire & Marine Ins. Co., 228 Cal.App.3d 1273, 279 Cal.Rptr. 498 (1991) (no duty to defend, under medical malpractice policy, federal grand jury investigation and criminal prosecution); Jaffe v. Cranford Ins. Co., 168 Cal.App.3d 930, 214 Cal.Rptr. 567 (1985) (no duty to defend, under psychiatrist's malpractice policy, state criminal charges).
 
 
 49
 In reaching the contrary conclusion, the majority simply misreads section 533.5(b). That section states:
 
 
 50
 No policy of insurance shall provide ... any duty to defend ... any claim in any criminal action or proceeding or in any action or proceeding brought pursuant to [unfair competition and false advertising statutes] in which the recovery of a fine, penalty, or restitution is sought by the Attorney General, any district attorney, any city prosecutor, or any county counsel....
 
 
 51
 Cal. Insur. Code § 533.5(b) (emphasis added). Although, as the majority points out, the list of government lawyers in this provision doesn't include the United States Attorney, it doesn't have to because it enumerates only the government lawyers who can bring suit under California's unfair competition and false advertising statutes. As insurers point out, the phrase "any criminal action or proceeding" is separated by the disjunctive "or" from actions brought pursuant to California's unfair competition and false advertising statutes. This makes perfect sense because such actions can be brought by both the government and private parties. See Cal. Bus. & Prof.Code §§ 17204, 17535; see also Bank of the West v. Superior Court of Contra Costa County, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). As applied to the specified civil actions, therefore, the list serves a useful function: It limits the statute's scope to unfair competition and false advertising actions brought by the government, not those brought by private parties.
 
 
 52
 By contrast, the majority's interpretation-under which this is a list of lawyers who can bring criminal prosecutions-makes no sense because at least one of the lawyers listed (the county counsel) cannot bring criminal charges. See Cal. Gov.Code §§ 26529, 27642. Thus, it's hard to see how the list could modify the phrase "any criminal action." In fact, the circumstance under which "county counsel" was added to the list conclusively undermines the notion that the list has any relevance to criminal prosecutions. In 1991, the legislature for the first time authorized county counsels to seek relief under the unfair competition statute; in doing so, it conformed section 533.5 to reflect this by adding county counsel to the list. See 1991 Cal. Legis. Serv. 5013, ch. 1195 (West). Quite obviously, the list only includes those lawyers who are authorized to bring unfair competition and false advertising actions, and has nothing at all to do with criminal prosecutions.
 
 
 53
 The majority's interpretation also ignores the phrase preceding the list, which the list also modifies: "in which the recovery of a fine, penalty, or restitution is sought by" the listed lawyers. The use of the word "recovery" reinforces insurers' view that the list of lawyers applies only to civil actions: A prosecutor doesn't seek "recovery" of a conviction in a criminal proceeding.
 
 
 54
 The majority's reading leads to other interpretive conundrums. For example, section 533.5(a), which precludes indemnification of any criminal "fine, penalty, or restitution," contains the same list of lawyers as section 533.5(b). Reading the provisions in pari materia, the majority's reasoning requires us to interpret section 533.5(a) as prohibiting indemnification of monetary sanctions for criminal conduct imposed by the state but not those imposed by the federal government. This would effect a significant departure from existing law, which precludes indemnification of all criminal acts, see Cal. Civil Code § 1668, Cal. Insur. Code § 533, in a statute that was supposed to be "declaratory of ... the existing law." 1988 Cal. Stat. 1897, ch. 489, § 3. Moreover, such a distinction would be irrational: Why would indemnification of criminal fines imposed under federal law create any less of a moral hazard than indemnification of fines imposed under state law?
 
 
 55
 The California Supreme Court's observation that "on its face [section 533.5] does not apply to relief sought by the federal government," AIU Ins. Co. v. Superior Court, 51 Cal.3d 807, 837 n. 15, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990), relied on by the majority, is taken out of context. See maj. op. at 1417. The court there was referring to whether insurers were precluded from defending and indemnifying civil claims brought by the federal government. Moreover, the court merely observed an irrefutable fact: On its face, section 533.5(b) doesn't apply to certain civil proceedings instituted by the federal government-the federal government can't sue under California's unfair competition and false advertising statutes. See Cal. Bus. & Prof.Code §§ 17201, 17204, 17206, 17535. The court said nothing at all about the question before us: Whether the phrase "any criminal action" excludes federal prosecutions.
 
 
 56
 * * *
 
 
 57
 The good thing when a federal court misapplies state law is that its opinion can be ignored by the state courts. This may be cold comfort to appellees, but I am confident that the courts of California will lose no time in rejecting the majority's flawed interpretation of the policy and section 533.5(b). The sooner the better.
 
 
 
 [1]
 Bodell does not seek attorneys fees for the time period following his indictment. Hence the dissent mischaracterizes our position when stating that "the majority views the grand jury proceeding and subsequent criminal prosecution as part of a regulatory enforcement proceeding." See dissent at 1419
 
 
 [2]
 The carriers contend the duty to defend is only triggered if coverage is found under the Insuring Clause, and that there cannot be coverage under this clause because the criminal action did not seek damages within the meaning of the policy. This contention fails for several reasons. Most notably, if such were the case, the duty to defend when a governmental regulatory agency institutes a proceeding or suit seeking non-pecuniary relief would be illusory, for a proceeding for non-pecuniary relief will never involve a claim for damages, as that term is defined by the policy
 
 
 [3]
 The United States Attorneys' Manual acknowledges as much. See United States Attorneys' Manual § 9-11.101 (1988)
 
 
 [4]
 The dissent broadly asserts that "no California court has ever construed an insurance policy to cover criminal defenses." (dissent at p. 1421). But the cases it cites for support are inapposite. They do not contain language like that at issue here, but rather involve policies that promise to defend an insured only for "damages" covered under the respective agreements. Accordingly, those cases do not hold that an insurance policy can never cover criminal defenses, but that the insurers there had no duty to defend suits that did not seek recovery of damages covered by their policies. See Perzik v. St. Paul Fire & Marine Ins. Co., 228 Cal.App.3d 1273, 279 Cal.Rptr. 498, 500 (1991) ("An insurer is not obligated to defend a suit which does not seek the recovery of damages covered by the claimant's policy."); Jaffe, 214 Cal.Rptr. at 570 ("[W]here there is no potential for coverage, there is no duty to defend.")
 
 
 [5]
 The 1988 version provided:
 (b) No policy of insurance shall provide, or be construed to provide, any duty to defend, as defined in subdivision (c), any claim in any civil or criminal action or proceeding in which the recovery of a fine, penalty, or restitution is sought by the Attorney General, any district attorney, or any city prosecutor, notwithstanding whether the exclusion or exception regarding the duty to defend this type of claim is expressly stated in the policy.
 (emphasis added).
 
 
 [6]
 The 1990 version read:
 (b) No policy of insurance shall provide, or be construed to provide, any duty to defend, as defined in subdivision (c), any claim in any criminal action or proceeding brought pursuant to [specified sections of the Business and Professions Code] in which the recovery of a fine, penalty, or restitution is sought by the Attorney General, any district attorney, or any city prosecutor, notwithstanding whether the exclusion or exception regarding the duty to defend this type of claim is expressly stated in the policy.
 (emphasis added).
 
 
 [7]
 The AUSA's own affidavit refers to the Postal Inspection Service as engaging in a factfinding process together with the grand jury
 
 
 [1]
 As proof that the United States Attorney was really working for the Postal Service, the majority cites an affidavit from an Assistant United States Attorney where he states that he is "assisting the Postal Inspect[ion] Service and Federal Grand Jury." This affidavit was given nearly nine months before appellant even raised the issue of the insurers' duty to defend (the affidavit was given on February 28, 1989 and appellant tendered his defense around December 14, 1989) in an effort to obtain a stay of civil suits against appellant and his cohorts. It thus doesn't say anything about who actually "brought" the criminal proceedings against appellant; the AUSA merely says he was "assisting," not representing, the Postal Service. But even if the AUSA said what the majority thinks he said, so what? It's just not true and surely cannot bind the United States