[No. D008700. Fourth Dist., Div. One. Jan. 26, 1990.]

MICHAEL D. STEIN et al., Plaintiffs and Appellants, v. INTERNATIONAL INSURANCE CO., Defendant and Respondent.

**COUNSEL**

Philip A. DeMassa for Plaintiffs and Appellants.

Ernest Slome, Janelle Fike Garchie and Lewis, D'Amato, Brisbois & Bisgaard for Defendant and Respondent.

## Opinion

**WIENER, Acting P. J.**—This case involves an attempt by plaintiffs Michael D. Stein and Michael Stein, APC (collectively Stein), and James Warner to recover from their legal malpractice insurance carrier, defendant International Insurance Company, damages attributable to a malpractice suit which was never filed. Plaintiffs assert they reasonably incurred expenses investigating and defending against a potential claim notwithstanding that a lawsuit on that claim was never filed.

We reject International's principal contention that it has no duty to reimburse an insured for expenses incurred in the investigation of a claim simply because a lawsuit has not been filed. We nonetheless conclude that the relevant insurance policy, which provides that an insured may incur reimbursable "claims expenses" with the written consent of the insurer, requires at a minimum that the insured notify the insurer what investigation and defense expenses the insured believes are reasonably necessary. Because such a specific request was never made in this case, we hold the trial court properly granted summary judgment in favor of International.

### Factual and Procedural Background

Stein purchased a standard claims-made lawyer's professional liability policy from International which insured him and his employees against claims for professional negligence. Warner, a lawyer employed by Stein, was listed as a named insured. Under the policy, International agreed to pay "all sums which the Insured shall become legally obligated to pay as damages caused by acts or omissions . . . of the Insured, or any person for whose acts or omissions the Insured is legally responsible . . . ." In addition, International was obligated to "defend any suit against the Insured alleging such act or omission and seeking damages which are payable under the terms of this policy . . . ." The policy also specified that International would "pay all claims expenses in addition to the applicable limits of liability." "Claims expenses" were elsewhere defined to include "fees, costs, and expenses resulting from the investigation, adjustment, defense and appeal of a claim, suit or proceeding arising in connection therewith, if incurred by the Company, or by the Insured with written consent of the Company . . . ."

A federal grand jury indicted Warner in June 1984 on charges arising from his representation of certain clients including Cecil Stoffer and Steven Giffin. Stoffer and Giffin were also indicted. Warner notified International of the indictment and requested that International provide his criminal defense. International refused, citing as grounds that a defense to criminal charges was not within the terms of the policy.

Late in July, Robert Grimes, an attorney representing Cecil Stoffer, wrote to Warner advising him of Grimes's belief "that Cecil Stoffer would never have been charged in the case were it not for communications with you, and some activities and communications which you undertook which might amount to negligence. I also believe that the advice you gave Cecil, and upon which he relied, causing him to be indicted, came well within the scope of legal advice to a client or a potential client." Grimes requested that Warner notify his insurance carrier "to see if they will provide a legal defense to Cecil Stoffer in this case, for action and advice by you which I believe may have been negligent." Grimes also asked whether Warner would be willing to waive a statute of limitations defense so that Stoffer would not have to prosecute a civil action against Warner at the same time they were both defending against federal criminal charges.[1]

Warner notified International and forwarded a copy of Grimes's letter. Other than to request that Warner notify them when a suit was filed and responsive pleadings were due, International took no action to defend against Stoffer's possible "claim." Warner allegedly spoke with an attorney for International, R. Gaylord Smith, about Grimes's letter, but Smith refused to acknowledge any connection between the criminal action and the civil matter or offer advice to Warner concerning the statute of limitations issue. Stein claimed he was "forced to hire attorneys and investigate to prepare Warner's defense, and protect myself and my corporation from civil liability."

Warner was acquitted in the criminal action. No malpractice suit was ever filed against Warner or Stein. Nonetheless, plaintiffs filed this action against International alleging breach of contract, breach of the implied covenant of good faith and fair dealing and related causes of action. The court granted summary judgment in favor of International on all causes of action. Plaintiffs appeal from that judgment.

## Discussion

Plaintiffs argue that Grimes's letter on behalf of Stoffer constituted a "claim" which International was obligated to investigate and defend. Because International refused to do so, plaintiffs contend it is liable under the policy for amounts expended by plaintiffs in conducting such an investigation and defense. The policy defines "claims expenses" to include costs associated with the investigation and defense of a "claim." Referring to the "duty to defend" clause, International asserts it has no obligation to investigate or defend anything other than a "suit against the Insured . . . ." In contrast, plaintiffs argue that because "claim" is not specifically defined, the

---

[1] According to Warner, he was also contacted by Charles Goldberg, an attorney for Steven Giffin, about a possible civil claim by Giffin against Warner.

policy is at best ambiguous. Accordingly, they contend, International is required to defend and investigate "claims" which are not "suits."

## I

■ An insurance policy is, fundamentally, a contract between the insurer and the insured. Initially, we must look to the language of that contract to determine the obligations which the parties have assumed. (See, e.g., *Farmers Ins. Exch.* v. *Harmon* (1974) 42 Cal.App.3d 805, 809 [117 Cal.Rptr. 117]; *VTN Consolidated, Inc.* v. *Northbrook Ins. Co.* (1979) 92 Cal.App.3d 888, 892 [155 Cal.Rptr. 172]; *National Union Fire Ins. Co.* v. *Miller* (1987) 192 Cal.App.3d 866, 872 [237 Cal.Rptr. 632].)

The International policy issued to Stein refers at numerous points to both "suits" and "claims" under circumstances which imply there is a difference between the two.[2] The court in *Katz Drug Co.* v. *Commercial Standard Ins.* (Mo.App. 1983) 647 S.W.2d 831, 835 considered an insurance policy which "distinguish[ed] between a claim and a suit by using both terms." The insurer contended that its obligations under the policy arose only with the filing of a lawsuit. The court, however, disagreed: "If the terms were equivalent, the wording would be redundant." (*Ibid.*) Moreover, California courts have recognized there is a basic difference between the terms. ■ "A claim . . . is a demand for something as a right, or as due. A formal lawsuit is not required before a claim is made." (*Phoenix Ins. Co.* v. *Sukut Construction Co.* (1982) 136 Cal.App.3d 673, 677 [186 Cal.Rptr. 513].)

Here, the policy obligates International to pay for all reasonably incurred[3] "claims expenses," defined to include expenses resulting from the "investigation . . . of a claim, suit or proceeding arising in connection therewith . . . ." Nowhere does International disclaim the responsibility to investigate claims if no legal action has been filed against the insured.[4]

---

[2] For example, the policy defines "claims expenses" as "fees, costs, and expenses resulting from the investigation, adjustment, defense and appeal of a *claim, suit or proceeding arising in connection therewith* . . . ." (Italics added.) In the "Defense and Settlement" section of the policy, International reserved the right to discontinue its defense of the insured if its "limits of liability hereunder are exhausted prior to the reduction of any pending *claim or suit* to settlement, . . ." (Italics added.)

[3] The policy limits International's obligation to pay claims expenses to sums "incurred by the Company, or by the Insured with written consent of the Company . . . ." International does not contend it could unreasonably withhold such consent if requested by the Insured.

[4] Had International intended to limit its responsibility to postlawsuit investigations, a prominent disclaimer would have been necessary to counter the reasonable expectations of the insured attorney to the contrary. (See *Logan* v. *John Hancock Mut. Life Ins. Co.* (1974) 41 Cal.App.3d 988, 995 [116 Cal.Rptr. 528].) In effect, International's argument would require an attorney confronted with a claim by a former client to tell the client to file a lawsuit since that would be the only way to trigger the insurer's duty to defend. Such advice hardly seems consistent with a prompt resolution of the controversy and the interests of the attorney, the client or the legal system in general.

■ Because a "claim" is not limited to a "lawsuit," and because the policy itself contemplates the investigation of "claims" and the incurring of expenses in connection with such investigation, we must reject International's assertion that the lack of a lawsuit eliminates any obligation it may otherwise have under the policy.

## II

■ If the policy imposes obligations with respect to the investigation and defense of "claims," International does not appear to contend that the Grimes letter does not constitute such a claim. We therefore assume for the purposes of our discussion that it does. (Compare *Williamson & Vollmer Engineering, Inc.* v. *Sequoia Ins. Co.* (1976) 64 Cal.App.3d 261, 269-270 [134 Cal.Rptr. 427] and *Phoenix Ins. Co.* v. *Sukut Construction Co., supra,* 136 Cal.App.3d at pp. 677-678 with *Hoyt* v. *St. Paul Fire and Marine Ins. Co.* (9th Cir. 1979) 607 F.2d 864, 866-867; see also *Solo Cup Co.* v. *Federal Ins. Co.* (7th Cir. 1980) 619 F.2d 1178, 1188-1189.) Even so, we are confronted with some difficulty understanding the exact nature of plaintiffs' argument. They failed to specify the expenses they incurred "investigating" and "defending" against Stoffer's potential claim and, unfortunately, give us no further enlightenment in their appellate briefs. Plaintiffs do say that defense of the criminal charges against Warner was necessary to a successful defense of Stoffer's civil "claim" and, accordingly, its cost is a covered "claim expense" within the meaning of the policy. Neither the pleadings nor the evidence submitted in opposition to the motion for summary judgment, however, inform us whether Stein did anything other than pay for Warner's criminal defense. The opaqueness of plaintiffs' submissions suggests a negative answer.

If Stein's only damages were the amounts spent on a criminal defense for Warner, we readily conclude International is not responsible for the cost of such a defense. It is well established that an insurer is not required to provide a criminal defense to an insured under a liability policy obligating the insurer to pay "damages" for which the insured is found liable. (See *Jaffe* v. *Cranford Ins. Co.* (1985) 168 Cal.App.3d 930, 934 [214 Cal.Rptr. 567]; *State Farm Fire & Cas. Co.* v. *Superior Court* (1987) 191 Cal.App.3d 74, 77-78 [236 Cal.Rptr. 216].)

Plaintiffs effectively seek the same result here by asserting that defending the criminal action against Warner was an integral step in defending the potential civil action against Warner and Stein. This assertion ignores the potentially conflicting interests of a defendant in a criminal case and his liability insurance company obligated to defend a purportedly related civil claim. We think such potential conflicts are sufficiently serious and complex that International cannot be compelled to defend Warner's criminal action.

While nothing would preclude International from choosing such a course of action itself—pursuing a form of preventive legal malpractice—it is a judgment call to be left solely to the insurer. (See *United Pacific Ins. Co.* v. *Hall* (1988) 199 Cal.App.3d 551, 556-557 [245 Cal.Rptr. 99].)

To the extent plaintiffs were seeking something other than the costs of Warner's criminal defense, International apparently concluded that the expense of any such "investigation" was not warranted by the nebulous possibility of a future civil suit. Viewed with the benefit of hindsight, that judgment call appears absolutely correct. Nonetheless, an insured operates without prescience at the time he gives notice of a claim and may feel—as plaintiffs did here—that the insurer should take steps to perform an investigation.

We must therefore look to the terms of the policy to determine what an insured can do when he believes the insurer has not responded reasonably to the notice of a claim. International's policy provides that "claims expenses" for which the insurer is responsible may be incurred either by International or by the insured with International's written consent. The purpose of this provision is self-evident, protecting both the insurer and the insured. In order to recover for "claims expenses" incurred, the insured who disagrees with the insurer's handling of a claim must request the insurer to either (1) undertake certain action which the insured believes is reasonably required, or (2) consent in writing to allow the insured to take such action. By requiring such notice, the insurer will have the opportunity to determine for itself the reasonableness of the insured's request and can take proper steps to protect their mutual interests. Moreover, the insurer will retain control over the nature and costs of such investigation.

Here, plaintiffs never identified the steps they believed were necessary to defend the Stoffer "claim" other than Warner's criminal defense. As we have already explained, the policy did not require International to provide such a defense. Lacking a more specific request, International acted reasonably in not taking any particular action to defend or investigate the claim.

### DISPOSITION

The summary judgment in favor of International is affirmed.

Work, J., and Nares, J., concurred.

A petition for a rehearing was denied February 16, 1990, and the opinion was modified to read as printed above.