Allan SAMSON, Plaintiff,

v.

**ALLSTATE INSURANCE COMPANY, and Does 1 through 100, inclusive, Defendant.**

**No. C–96–0414 MHP.**

United States District Court, N.D. California.

Nov. 12, 1996.

Randy M. Hess and Duane W. Shewaga, Adleson Hess Christensen & Kelly, Campbell, CA, for Plaintiff.

Michael A. Barnes and Anuja G. Purohit, Sonnenschein Nath & Rosenthal, San Francisco, CA, for Defendant.

## MEMORANDUM AND ORDER

PATEL, District Judge.

Allan Samson brought this action against Allstate Insurance Company in state court alleging breach of contract, breach of the covenant of good faith and fair dealing, fraud, negligent misrepresentation and breach of fiduciary duty. Samson seeks damages resulting from Allstate's alleged failure to defend and indemnify plaintiff in an underlying sexual harassment claim. Defendant removed the action to this court on January 31, 1996, pursuant to the court's diversity jurisdiction. 28 U.S.C. §§ 1332, 1441(b).

Now before this court are cross motions for partial summary judgment on the question of Allstate's duty to defend plaintiff in the underlying claim.

Having considered the parties' arguments and submissions, and for the reason set forth below, the court enters the following memorandum and order.

## BACKGROUND [1]

### I. The Underlying Claim and Extrinsic Facts

Samson hired Joyce Chan to be his legal secretary in 1991. According to plaintiff, the two engaged in a consensual romantic relationship from 1991 until 1993, when Chan ended the relationship. Chan remained employed by Samson until 1995.

In a January 24, 1995 letter an attorney for Chan informed plaintiff's attorney that Chan would file formal charges of sexual harassment and retaliation with the Department of Fair Employment and Housing and bring suit in state court if Samson did not settle the claims for $75,000. Joint Statement of Undisputed Facts ("JSUF"), Exh. B. The letter asserts that Samson made advances to Chan within the first weeks of her employment, and that Chan ultimately acquiesced and continued in the relationship out of fear of losing her job. *Id.* at 2. According to Chan's attorney, Chan learned two years later that Samson's behavior constituted sexual harassment. *Id.* At that point, Chan ended the relationship and Samson allegedly retaliated against her by changing and threatening to change the terms of her employment. *Id.* at 2–3.

On February 16, 1995, after receiving the letter from Chan's attorney, Samson contacted Allstate asking them to confirm coverage and to tender the defense of the claim under his Homeowners and Personal Umbrella Policies with Allstate. JSUF, Exh. A. In that letter Samson alerted Allstate to a additional potential claim of bodily injury and property damage stemming from a fall by Chan in the stairs of Samson's office after work hours. *Id.* at 2–3. Allstate acknowledged receipt of the tender in a reservation of rights letter dated February 23, 1995. JSUF, Exh. E. Allstate would not confirm coverage at that time. *Id.* Samson settled with Chan for $50,000 and a favorable letter of recommendation. JSUF, Exhs. L & M.

### II. The Insurance Policies

Samson was insured by Allstate under a Deluxe Plus Homeowners Policy and a Personal Umbrella Policy.[2] Both policies contain language relevant to Allstate's duty to defend.

The Umbrella Policy states, "Allstate will pay when an Insured becomes legally obligated to pay for personal injury or property

---

**1.** Unless otherwise noted, the facts are taken from the parties' Joint Statement of Undisputed Facts and the documents appended thereto.

**2.** Samson originally had a "Deluxe Homeowners Policy", JSUF, Exh. G, which was later upgraded to a "Deluxe Plus Homeowners Policy", JSUF,

damage caused by an occurrence."[3] JSUF, Exh. F at 4. The policy further provides that "Allstate will defend an Insured sued as the result of an occurrence covered by this policy even if the suit is groundless, false or fraudulent." *Id.* at 5. An "occurrence" is defined by the policy as "an accident or a continuous exposure to conditions." *Id.* at 2.

The Homeowners Policy provides:

Subject to the terms, limitations and conditions of this policy, Allstate will pay damages which an Insured person becomes legally obligated to pay because of bodily injury or property damage arising from an accident and covered by this part of the policy.

We may investigate or settle any claim or suit for covered damages against an Insured person. If an Insured person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are groundless, false or fraudulent.

JSUF, Exh. H at 23. Both policies contain exclusions for occurrences arising out of a business or business activity. JSUF, Exh. F at 6; Exh. H at 25.

*LEGAL STANDARD*

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (the nonmoving party may not rely on the pleadings but must present significant probative evidence supporting the claim); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

The court's function, however, is not to make credibility determinations, *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, and the inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.,* 809 F.2d at 631.

*DISCUSSION*

Both parties seek a declaratory judgment as to Allstate's duty to defend Samson with respect to the claims made by Chan. Allstate argues that it has no such duty and Samson urges that it does.

A threshold question to which both parties make only passing reference in their briefs is whether the letters from Chan's attorney, JSUF, Exhs. B & C, constitute a "suit" triggering a potential duty to defend under the coverage afforded by the insurance policies. At oral argument on the motion, the court requested that the parties submit further briefing on the issue and those submissions have been duly considered.

Both the Umbrella Policy and the Homeowners Policy provide for differing obligations on the part of the insurer depending on whether the insured faces a "suit" or a "claim or suit". Both policies state that Allstate "will" provide a defense when an insured is "sued." JSUF, Exh. F at 5; Exh. H at 23. Both policies also make the investigation and settlement of a "claim" discretionary. "We *may* investigate or settle any claim or suit for covered damages against an Insured person." JSUF, Exh. H at 23 (emphasis added); Exh. F at 6 ("We may settle any claim or suit as we consider appropriate."). When the broad phrase of "claim or suit" is used in either policy it is always in the context of discretionary language. The policy clearly juxtaposes the obligations All-

---

Exh. H. For the purposes of this motion, the coverage of the two policies is identical.

3. Under the policy "Personal Injury" is defined to include, in addition to bodily injury (which includes both physical and mental injury), false arrest, libel, slander, humiliation and invasion of privacy rights, "discrimination and violation of civil rights, where recovery is permitted by law." JSUF, Exh. F at 3. This coverage is interesting in light of Allstate's limitation on coverage to an "occurrence."

state assumes in the case of settlement of a claim and defense of a suit. "We *may* investigate or settle any *claim or suit* for covered damages against an Insured person. If an Insured person is *sued* for these damages, we *will* provide a defense...." JSUF, Exh. H at 23. Both policies also agree to pay when the insured becomes "legally obligated" to pay for injuries or damage covered by the policies. JSUF, Exh. F at 4; Exh. H at 23.

■ Both parties offer competing dictionary definitions of "suit" to support their positions. While both lay and legal definitions of the word support the conclusion that "suit" indicates a proceeding in a court of law, *see also TNT Marketing, Inc. v. Agresti,* 796 F.2d 276, 278 (9th Cir.1986), that is less relevant than the policy language itself, which clearly distinguishes between suits and claims. Based on the policy language, the court concludes that Allstate has only obligated itself to defend the insured in the context of suits and has left its investigation and settlement of claims discretionary. Whether the demand letters in this action are a suit is the question before the court.

■ Almost all cases to address the question of whether a demand letter or anything short of a formal complaint constitutes a "suit" for the purpose of triggering a duty to defend have done so in the context of agency action prompting environmental cleanup. In the leading case in the Ninth Circuit, *Aetna Cas. & Sur. Co., Inc. v. Pintlar Corp.,* 948 F.2d 1507 (9th Cir.1991), the Environmental Protection Agency ("EPA") notified the insured that it was a "potentially responsible party" ("PRP") in connection with a contamination site under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"). The question before the court was whether the PRP notice issued by the EPA, under a policy providing a defense of "any suit" and in the absence of a formal lawsuit,

triggered insurer's duty to defend. The Ninth Circuit held that EPA's PRP notice came within the meaning of "suit" and triggered a duty to defend. *Id.* at 1517.[4]

Particularly instructive is the court's reasoning in *Pintlar:*

Unlike the garden variety demand letter, which only exposes one to a potential threat of future litigation, a PRP notice carries with it immediate and severe implications. Generally, a party asserting a claim can do nothing between the occurrence of the tort and the filing of the complaint that can adversely affect the insureds' rights. However, in a CERCLA case, the PRP's substantive rights and ultimate liability are affected from the start of the administrative process.

*Id.* at 1516 (citing *Avondale Indus., Inc. v. Travelers Indem. Co.,* 697 F.Supp. 1314, 1321 (S.D.N.Y.1988), *aff'd,* 887 F.2d 1200 (2d Cir. 1989), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990)).

While the Ninth Circuit applied Idaho state law in *Pintlar,* federal courts in California have followed its lead and have noted that such a conclusion is not inconsistent with California law. *See e.g., Wynn's Int'l, Inc. v. Continental Ins. Co.,* 1995 WL 498846. at *6 (N.D.Cal. Aug. 14, 1995) (noting that the holding in *Pintlar* did not turn on Idaho law and that at least one California court had cited it with approval); *Dillingham Constr. Pacific, Ltd. v. Aetna Cas. & Sur. Co.,* 1995 WL 621813, at *2–3 (N.D.Cal. Oct. 17, 1995).

Contrary to the contentions of the parties, California law is inconclusive at best. Plaintiff relies heavily on *Miller v. Elite Ins. Co.,* 100 Cal.App.3d 739, 755, 161 Cal.Rptr. 322 (1980), for the proposition that "[t]he duty to defend, where it exists, exists at the prelitigation as well as the litigation stages...." While it is not abundantly clear from this one sentence what the court meant by prelitigation,[5] defendant conceded at the hearing on

---

4. Other circuits have reached contrary conclusions with respect to similar agency actions. *See Ryan v. Royal Ins. Co.,* 916 F.2d 731 (1st Cir. 1990); *Ray Indus., Inc. v. Liberty Mut. Ins. Co.,* 974 F.2d 754 (6th Cir.1992). *Contra Anderson Dev. Co. v. Travelers Indem. Co.,* 49 F.3d 1128, 1131 (6th Cir.1995) (effectively reversing *Ray*

*Indus.* after Michigan Supreme Court spoke decisively on the issue).

5. Given that the question in *Miller* of the duty to defend or of good faith and fair dealing did not arise until after a lawsuit had been filed, it would not be absurd to read "prelitigation" as simply meaning "prior to trial."

this motion that prelitigation means the period before a lawsuit is filed. Despite the fact that plaintiff submits defendant's trial brief in *Miller* to show that at least some of the relevant policy language at issue there was the same as in the instant case, Pl.'s Supp. Brief, Exh. U at 15:8, the facts in *Miller* are distinguishable. There the insurer had already assumed defense of the claim, rejected a settlement offer without informing plaintiff and then denied coverage after a lawsuit was filed. The issue in *Miller* was the insurer's duty to defend a lawsuit, not its defense duties prior to the suit. Moreover, the case the *Miller* court cites for support suggests nothing more than that a large number of claims potentially covered by insurance settle without litigation. *Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 659, 328 P.2d 198 (1958) (good faith and fair dealing case). While the court is not insensitive to the myriad advantages of encouraging insurers to settle claims before they ever become lawsuits, it is not willing to read an unadorned and nebulous policy statement of the California Court of Appeals to trump the clear language of the policy. *See Garriott Crop Dusting Co. v. Superior Court*, 221 Cal.App.3d 783, 790, 270 Cal.Rptr. 678 (1990) (finding the proper focus for a court on the policy language rather than judicially created general rules).

In *Stein v. International Ins. Co.*, 217 Cal.App.3d 609, 612–13, 266 Cal.Rptr. 72 (1990), a California appellate court determined that a lawsuit was not necessary to trigger a duty to defend under an attorney malpractice policy. However, the language of the policy at issue provided for coverage of expenses "resulting from the investigation, adjustment, defense and appeal of a claim, suit or proceeding". *Id.* at 613 n. 2, 266 Cal.Rptr. 72. The court found that the language of the policy drew a distinction between the terms "claim" and "suit" and that it took responsibility for payment of expenses relating to both. *Id.* The court also noted that California courts have likewise recognized a difference between the terms "claim" and "suit". *Id.* (citing *Phoenix Ins. Co. v. Sukut Construction Co.*, 136 Cal.App.3d 673, 677, 186 Cal.Rptr. 513 (1982)).

Plaintiff also relies on *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993), for the expansive proposition that an insurer is obligated to provide a defense even though no complaint has been filed. *Montrose* says nothing of the kind. The case concerned the scope of the insurer's duty to defend after a lawsuit had been filed, and the court reiterated that an insurer has a broad duty to defend against claims that are potentially covered by the policy. *Id.* at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153. In fact, the court in *Montrose* was essentially concerned with the differing duties of defense and indemnification and whether facts relating to coverage but not pled in a *third party complaint* could generate or defeat a duty to defend. *Id.* at 296, 24 Cal.Rptr.2d 467, 861 P.2d 1153. Although *Montrose* generally supports the contention that California courts are solicitous of the insured's reasonable expectations, *see also Saltarelli v. Bob Baker Group Med. Trust*, 35 F.3d 382, 386 (9th Cir.1994) (noting strong modern trend in insurance contract interpretation toward reasonable expectations doctrine), in this instance the court cannot conclude that in light of the policy language Samson's expectations of defense were reasonable. Thus, plaintiff's reliance on *Montrose* is unavailing.

In light of the fact that California courts have not spoken on this issue, this court addresses the question presented in the instant action according to the guidance provided by the Ninth Circuit in *Pintlar* and concludes that the claims presented to Samson by Chan do not constitute a suit for the purposes of triggering Allstate's duty to defend.

In *Pintlar* the Ninth Circuit relied heavily in reaching its conclusion on the fact that the agency action involved there exposed the insured to immediate obligations that could dramatically affect its future liability. *Pintlar*, 948 F.2d at 1516–17. The court contrasted the initiation of that administrative process to the "garden variety demand letter, which only exposes one to a potential threat of future litigation." *Id.* at 1516.

The letters from Chan's attorney were just that, garden variety demand letters carrying

a potential threat of future litigation. To ignore the letters would not have had any consequences on Samson's rights or liabilities later on. Nor would ignoring them have necessarily resulted in litigation. Chan had not filed a charge with either the proper state or federal administrative agency nor received a right to sue letter.

Moreover, the letter constituting the claim in the present action is sufficiently vague that it is not surprising that the parties argue past each other in analyzing whether the claim is covered under either Allstate policy. While a complaint is not the only source from which a court determines an insurer's duty to defend, *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 276–77, 54 Cal.Rptr. 104, 419 P.2d 168 (1966), California courts are agreed that it is the first place to start. *See e.g., Montrose*, 6 Cal.4th at 295, 24 Cal. Rptr.2d 467, 861 P.2d 1153 ("determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy"). In this case the letter was not only a "claim," it was a vague one. A complaint, had it ever materialized, could only have aided in the determination of Allstate's duty to defend and might have spared the parties the expense of the present litigation.

This court should not be understood to mean that a formal lawsuit is always required to trigger a duty to defend a "suit"; coercive administrative or quasi-judicial proceedings that fall short of formal lawsuits may well fall within the meaning of "suit" for the purposes of a duty to defend. *See North Pacific Ins. Co. v. Mai*, 1995 WL 854735, at *4 (D. Idaho June 28, 1995). It would be contrary to the interests of judicial economy and of justice to encourage potential litigants to bypass early attempts to settle in the hopes of being ultimately indemnified by the insurer. However, the court must also abide by the plain meaning of the policy. *See Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995). Here Allstate did not oblige itself to defend or settle threats of future litigation.

Accordingly, this court finds that under the facts presented Allstate had no duty to defend.

*CONCLUSION*

For the reasons set forth above, plaintiff's motion for partial summary judgment is hereby DENIED and defendant's motion for partial summary judgment is GRANTED.

IT IS SO ORDERED.