Filed 12/28/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CHRIS LABARBERA et al., | C093414 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2019-00248873-CU-IC-GDS) |
| v. | |
| SECURITY NATIONAL INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge. Affirmed.

Lerch Sturmer, Jerome N. Lerch and David W. Lerch for Plaintiffs and Appellants.

Nielsen Katibah, James C. Nielsen and Daniel N. Katibah for Defendant and Respondent.

1

This case involves a dispute over insurance coverage. Plaintiff and appellant Chris LaBarbera hired Richard Knight dba Knight Construction (Knight) to remodel a house pursuant to a contract that provided Knight would defend and indemnify LaBarbera for all claims arising out of the work. Knight obtained a general liability insurance policy from defendant and respondent Security National Insurance Company (Security National) that covered damages Knight was obligated to pay due to bodily injury to a third party. As relevant here, the policy also covered Knight's "liability for damages . . . [a]ssumed in a contract or agreement that is an 'insured contract.' " Security National acknowledges the indemnity provision in Knight's contract with LaBarbera is an "insured contract" within the meaning of the policy. The policy also provides, "If we defend an insured [i.e., Knight] against a suit and an indemnitee of the insured [i.e., LaBarbera] is also named as a party to the suit, we will defend that indemnitee" if certain conditions are met.

During the remodeling work, a subcontractor suffered catastrophic injuries, and sued both LaBarbera and Knight. LaBarbera's liability insurer (plaintiff and appellant Underwriters)[1] defended him in that lawsuit, and Security National defended Knight. LaBarbera also tendered his defense to Knight and to Security National, but they either ignored or rejected the tender. After settling the underlying lawsuit for $465,000, LaBarbera and Underwriters sued Knight and Security National, seeking to recover the full $465,000 settlement amount and over $100,000 in expenses and attorney fees incurred defending LaBarbera in that lawsuit.

Security National moved for summary judgment on the ground that all claims against it were barred because the undisputed facts established it did not have an

_____

[1] More precisely, "Certain Underwriters at Lloyd's London Subscribing to Policy Number ATR/R/419433."

2

obligation to defend or indemnify LaBarbera. The trial court granted the motion and entered judgment in favor of Security National.

LaBarbera and Underwriters timely appealed, and we now affirm, although we adopt different reasoning than the trial court. As we will explain, we agree with Security National that the indemnitee defense clause in Knight's general liability insurance policy did not bestow third party beneficiary rights on the indemnitee, LaBarbera, who benefitted only incidentally from the clause. Because LaBarbera is not a third party beneficiary under Knight's policy, he is precluded from bringing a direct action against Security National.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Construction Contract*

In June 2016, LaBarbera hired Knight to remodel a house that LaBarbera owned in Carmichael, California. The contract between Knight and LaBarbera (hereafter, the "construction contract") contains the following indemnity provision: "Contractor [i.e., Knight] shall indemnify Client [i.e., LaBarbera] against, hold it harmless from and defend Client from all claims, loss, liability, and expense, including actual attorney's fees, arising out of or in connection with Contractor's Services performed under this Contract. This indemnity shall be provided even if Client is partly responsible for the claim, damage, injury or loss, but Contractor shall not provide indemnity against claims or losses deemed to be caused by the sole negligence or willful misconduct of Client or Client's agents or employees." In other words, Knight agreed to indemnify and defend LaBarbera from all claims arising out of the remodeling work, *unless* the claims were caused by LaBarbera's sole negligence or willful misconduct.

*Knight's Insurance Policy*

Knight obtained a general liability insurance policy from Security National to cover his work on LaBarbera's remodeling project. Knight was the "insured" under the policy, and it is undisputed that LaBarbera was not named as an additional insured. The

policy contains a $1 million per occurrence limit, and provides, "We will pay those sums that the insured [i.e., Knight] becomes legally obligated to pay as damages because of bodily injury . . . . We will have the right and duty to defend the insured against any suit seeking those damages."[2] We note that defense costs (i.e., amounts spent by the insurer defending the insured against a suit, including attorney fees) are considered supplementary or additional payments, and do not reduce the policy limits available to settle the suit or pay an adverse judgment. (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2021) ¶ 7.502.1, p. 7B-2.) So, for example, if Knight were sued for injuries arising out of the remodeling work and a $1 million judgment was entered against him, and if Security National also incurred $500,000 in defense costs, it would pay both the $1 million judgment and all defense costs (because the defense costs would not reduce the $1 million policy limit).

The policy expressly excludes coverage for "[b]odily injury . . . for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." As relevant here, however, the policy also provides: "This exclusion does not apply to liability for damages [¶] . . . [¶] [a]ssumed in a contract or agreement that is an *insured contract* . . . . Solely for the purposes of liability assumed in an insured contract, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of bodily injury . . . ." (Italics added.) We will refer to this as the "insured contract exception." An "insured contract" is defined as "[t]hat part of any . . . contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for bodily injury . . . to a third person . . . ." Security National acknowledges the indemnity provision in the construction contract is an insured contract within the meaning of the

---

[2] The policy puts defined terms in quotation marks, which we have removed to facilitate reading.

4

policy. Thus, under the insured contract exception, the policy covers Knight for liability he assumed pursuant to the indemnity provision in the construction contract, but defense costs incurred by the "party other than the insured" (here, LaBarbera) are treated as "damages because of bodily injury" and thus reduce the policy limits available to settle the underlying claim or pay an adverse judgment. (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2021) ¶ 7:1475.3, p. 7E-48.)

The policy also contains a clause in the "Supplementary Payments" section that provides: "If we defend an insured against a suit and an indemnitee of the insured is also named as a party to the suit, we will defend that indemnitee if all of the following conditions are met: [¶] a. The suit against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an insured contract; [¶] . . . [¶] d. The allegations in the suit and the information we know about the occurrence are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee; [¶] e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such suit and agree that we can assign the same counsel to defend the insured and the indemnitee[.] [¶] . . . [¶] So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. [And], such payments will not be deemed to be damages for bodily injury . . . and will not reduce the limits of insurance." We will refer to this as the "indemnitee defense clause." As just noted, it provides Security National will defend the insured's indemnitee (here, LaBarbera) if certain conditions are met. If those conditions are met and Security National assigns the same counsel to defend both Knight and the indemnitee, then the indemnitee's defense costs "will not be deemed to be damages for bodily injury . . . and will not reduce the limits of insurance." As Security National explains, "When the various conditions can be met, . . . it is to Knight's advantage for

5

Security National to extend a defense to his . . . contractual indemnitee through a single defense attorney, because doing so will not reduce Knight's available indemnity limits."

*The Accident and the Paz-Ramirez Litigation*

Knight hired a subcontractor to perform the stucco work on LaBarbera's remodeling project, and the subcontractor hired Nicolas Paz-Ramirez. In September 2016, Paz-Ramirez was electrocuted by a live wire while performing stucco work and suffered catastrophic injuries. As relevant here, Paz-Ramirez sued Knight and LaBarbera for damages based on negligence and premises liability theories. We refer to this as the Paz-Ramirez litigation.

Security National defended Knight in the Paz-Ramirez litigation. Knight filed an answer generally denying the allegations in the complaint. Knight also asserted several affirmative defenses, including: (1) "that other Defendants in this lawsuit . . . were themselves responsible for the Plaintiff's damages" and that any liability should "be assessed in proportion to the liability of other co-Defendants"; and (2) that if Knight were found liable to Paz-Ramirez, "such liability in whole or in part will be the direct or imputed fault and responsibility of other parties to this litigation."

LaBarbera had his own premises liability insurance policy covering the house that Knight was remodeling; like Knight's policy, it contained a $1 million per occurrence limit. The policy was issued by Underwriters, and Underwriters defended LaBarbera in the Paz-Ramirez litigation without a reservation of rights.

*LaBarbera's Tender of Defense*

In November 2017, due to LaBarbera's concern that his liability might exceed the limits of his personal policy, his personal counsel sent a letter to Knight's counsel tendering his defense and indemnity based on the indemnity provision in the construction contract. Although that letter did not mention Security National or Knight's insurance policy, Knight's counsel apparently forwarded the letter to Security National, which responded that the construction contract between Knight and LaBarbera did not include

6

an agreement to add LaBarbera as an additional insured under Knight's policy from Security National.

In February 2018, LaBarbera's insurance defense counsel (counsel appointed by Underwriters to represent LaBarbera) wrote to Security National, asserting that the insured contract exception clearly provided that Knight's policy covered LaBarbera's defense and indemnity. In May, Underwriters' counsel (as opposed to counsel appointed to represent LaBarbera) requested that Security National provide LaBarbera with a defense, observing that the contract between Knight and LaBarbera was an "insured contract," and citing the indemnity defense clause.

*Resolution of the Paz-Ramirez Litigation*

On or about May 24, 2018, LaBarbera settled the Paz-Ramirez litigation for $465,000; Underwriters paid this entire amount. LaBarbera states he incurred over $100,000 in attorney fees and litigation costs to defend himself in the Paz-Ramirez litigation (although it is undisputed that Underwriters paid most, if not all, of these fees).

In December 2018, Knight settled the Paz-Ramirez litigation for $900,000.

*The Present Lawsuit*

In January 2019, LaBarbera and Underwriters sued Knight and Security National over their failure to defend and indemnify LaBarbera in the Paz-Ramirez litigation. The complaint includes four causes of action against Security National, for (1) breach of contract (i.e., the insurance policy)/breach of the duty to reimburse defense costs, (2) tortious breach of the covenant of good faith and fair dealing (bad faith), (3) a request for a judicial declaration that Security National had a duty to defend and indemnify LaBarbera under the insurance policy, and (4) subrogation. LaBarbera and Underwriters sought $565,000 in compensatory damages (i.e., the $465,000 paid to settle the Paz-Ramirez litigation and $100,000 in attorney fees and other defense costs), along with punitive damages on the breach of covenant claim.

7

The complaint also includes two causes of action against Knight, for (1) breach of the construction contract (i.e., breach of the duty to defend and indemnify LaBarbera), and (2) subrogation. LaBarbera and Underwriters ultimately dismissed their claims against Knight, although we are not told on what terms.

*The Summary Judgment Motion*

Security National filed a motion for summary judgment or summary adjudication. First, it argued the undisputed material facts established LaBarbera is not an insured or a third party beneficiary of the insurance policy and thus had no standing to sue on the policy.[3] The trial court rejected that argument; it concluded LaBarbera was a third party beneficiary under the policy's indemnity defense clause, which, as noted, stated: "we [i.e., Security National] will defend [the] indemnitee [i.e., LaBarbera]" if certain conditions are met. The trial court found this language "clearly expresses an intent that, under *certain circumstances*, the policy may operate for the benefit of an indemnitee (here, LaBarbera). . . . Thus, . . . the Court is not persuaded that LaBarbera is not a third party beneficiary under the indemnitee-defense clause."[4]

---

[3] Security National also argued LaBarbera lacked standing because he had previously assigned to Underwriters "all of [his] rights, title and interest in and to any actual or potential claims for damages against Security National . . . ." The trial court agreed, and granted Security National's motion *as to LaBarbera*. LaBarbera does not challenge this ruling on appeal, which means that, technically, Underwriters is the sole appellant, and that it is pursuing LaBarbera's claims against Security National pursuant to the assignment. For clarity, however, we continue to refer to LaBarbera, because the parties do so throughout their briefs, and because it would be prohibitively cumbersome to repeatedly refer to "Underwriters, as assignee of LaBarbera's claims against Security National."

[4] The trial court also found the insured contract exception did not create a duty to defend the indemnitee. LaBarbera does not challenge that finding on appeal.

8

Second, Security National argued that, assuming LaBarbera did have standing to sue on the policy, it owed him no duty to defend because two of the conditions to providing such a defense were not met. One of those conditions was that "[t]he allegations in the suit and the information we know about the occurrence are such that *no conflict appears to exist* between the interests of the insured and the interests of the indemnitee."[5] (Italics added.) Security National argued this condition was not met (and could never be met) because Knight's defense strategy in the Paz-Ramirez litigation included shifting the blame for Paz-Ramirez's injuries to LaBarbera, which created an apparent conflict between their interests.

LaBarbera argued in opposition that, at a minimum, there was a triable issue of fact as to whether one attorney could have represented both Knight and LaBarbera, because even if they both claimed the other was negligent, and, indeed, even if it turned out LaBarbera *was* negligent, Knight still had a duty to defend and indemnify him *unless* Paz-Ramirez's injuries were caused by LaBarbera's *sole* negligence or willful misconduct, and there was no evidence that was the case (or even that Knight claimed that was the case).

The trial court agreed with Security National. It concluded there was an apparent conflict in Knight's and LaBarbera's litigation strategies, and, thus, Security National met its burden to show that at least one of the indemnity clause conditions precedent was not

---

[5] Another condition is that "[t]he indemnitee and the insured ask us to conduct and control the defense . . . and agree that we can assign the same counsel to defend the insured and the indemnitee[.]" Security National argued this condition was not satisfied because Knight never asked it to defend LaBarbera and never agreed Security National could defend him and LaBarbera through the same counsel. The trial court did not address this issue.

met.[6]  Based on its ruling, the trial court did not address Security National's arguments related to LaBarbera's bad faith and subrogation claims.

The trial court entered judgment against LaBarbera and Underwriters on December 3, 2020.  On January 21, 2021, LaBarbera and Underwriters filed a timely notice of appeal.  Following several extensions of time as to both parties, the case was fully briefed on June 30, 2022.  The case was assigned to this panel on August 31, 2022.

## DISCUSSION

### I

### *Standard of Review*

Summary judgment is properly granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c).)  "Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion.  [Citation.]  ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." '  [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

Although we review the trial court's decision de novo, we do not ignore the trial court's decision.  Instead, that decision is presumed to be correct, and appellants have the

---

[6]  LaBarbera argued Security National waived all the conditions of the indemnitee defense provision because it "misdirected" him by stating only that he was not an additional insured under the policy, and it did not analyze coverage under the indemnitee defense provision.  The trial court disagreed, finding Security National had met its burden of establishing the conditions were not waived.  LaBarbera does not challenge this finding on appeal.

burden of affirmatively establishing reversible error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609; *Swigart v. Bruno* (2017) 13 Cal.App.5th 529, 535.)

We may affirm a ruling granting a motion for summary judgment "if it is correct on any ground, regardless of the trial court's stated reasons." (*Truck Ins. Exchange v. County of Los Angeles* (2002) 95 Cal.App.4th 13, 20.)

II

*Third Party Beneficiary*

Security National argued in its motion for summary judgment that LaBarbera's claims against it failed because he was neither a party nor a third party beneficiary of the Knight insurance policy, and therefore he was not permitted to bring suit against Security National directly as a third party beneficiary of the Knight policy. The relevant provision is the indemnitee defense clause, which provides: "If we defend an insured against a suit and an indemnitee of the insured is also named as a party to the suit, we will defend that indemnitee if all the following conditions are met." The trial court found LaBarbera was a third party beneficiary under the indemnitee defense clause, which the court found "clearly expresses an intent that, under *certain circumstances*, the policy may operate for the benefit of an indemnitee (here, LaBarbera)."[7] As we next explain, we agree with Security National that LaBarbera is not a third party beneficiary of the indemnitee defense clause, and thus affirm the trial court's ruling on this basis, while rejecting that court's rationale.[8]

---

[7] As noted above, the trial court found LaBarbera was not rendered a third party beneficiary by virtue of the insured contract exception, and LaBarbera does not challenge this finding on appeal.

[8] Although we may affirm a ruling on a ground not adopted by the trial court, we may decline to do so when the alternative ground presents issues that the opposing party and trial court did not have an opportunity to address. (See *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 433; *Erickson v. Aetna Health Plans of California, Inc.* (1999) 71 Cal.App.4th 646, 653.) In such a case, it is appropriate to remand the case to the trial

A. *Legal Background*

"An insurance policy is, fundamentally, a contract between the insurer and the insured." (*Stein v. International Ins. Co*. (1990) 217 Cal.App.3d 609, 613.) As a general rule, "a third party . . . may not bring a direct action against an insurance company on the contract because the insurer's duties flow to the insured." (*Harper v. Wausau Ins. Co.* (1997) 56 Cal.App.4th 1079, 1086; see *Wexler v. California FAIR Plan Assn.* (2021) 63 Cal.App.5th 55, 62-63 (*Wexler*); *Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1092.) It is undisputed that LaBarbera was not an insured or an additional insured under the Knight policy, and thus he is not a party to the policy and is subject to the general rule, which would preclude him from bringing this action.

But there are exceptions to the general rule. One such exception is found in Civil Code section 1559, which provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." (See *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 875 [" 'Civil Code section 1559 allows a direct action [by a third party beneficiary] against an insurance company to enforce the terms of a contract which were intended to benefit the third party' "].) " 'It is not necessary that the beneficiary be named and identified as an individual; a third party may enforce a contract if he can show he is a member of a class for whose benefit it was made.' " (*Prouty v. Gores Technology Group* (2004) 121 Cal.App.4th 1225, 1232 (*Prouty*).) " 'The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract. [Citation.] If the terms of

---

court to decide those issues in the first instance. (See *Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1149; *People v. Goolsby* (2015) 62 Cal.4th 360, 368.) Here, LaBarbera and the trial court had the opportunity to address the third party beneficiary issue and did so.

12

the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person. The parties are presumed to intend the consequences of a performance of the contract.' " (*Ibid.*) Further, "the contract need not be exclusively for the benefit of the third party. He does not need to be the sole or the primary beneficiary." (*Id.* at p. 1233; accord *Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 943 ["although the contract may not have been made to benefit him alone, he may enforce those promises directly made for him"].)

However, third parties "who are only incidentally or remotely benefitted" by the contract may not enforce it. (*Harper v. Wausau Ins. Co., supra*, 56 Cal.App.4th at p. 1087.) Thus, " ' "The fact that [the third party] is incidentally named in the contract, or that the contract, if carried out according to its terms, would inure to his benefit, is not sufficient to entitle him to demand its fulfillment. It must appear to have been the intention of *the parties* to secure to him personally the benefit of its provisions." ' " (*Eastern Aviation Group, Inc. v. Airborne Express, Inc.* (1992) 6 Cal.App.4th 1448, 1452.) As our Supreme Court has held: "A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him. [Citations.] As to any provision made not for his benefit but for the benefit of the contracting parties or for other third parties, he becomes an intermeddler" and may not enforce the contract. (*Murphy v. Allstate Ins. Co., supra*, 17 Cal.3d at p. 944.)

"The California rule is that in order for one to have a direct cause of action against an insurer an intent to make an obligation inure to the benefit of a third party must clearly appear, and if there is any doubt it should be construed against such intent." (*Rupley v. Huntsman* (1958) 159 Cal.App.2d 307, 312; see also *Wexler, supra*, 63 Cal.App.5th at p. 66 [noting courts resolve doubts against the existence of a third party beneficiary]; *Chamberlin v. Los Angeles* (1949) 92 Cal.App.2d 330, 332 ["An intent to make an

13

obligation inure to the benefit of a third party must clearly appear in a contract of insurance and if any doubt exists it should be construed against such intent"].)

"[T]hird party beneficiary status is a matter of contract interpretation." (*Schauer v. Mandarin Gems of Cal., Inc.* (2005) 125 Cal.App.4th 949, 957.) But where, as here, the terms of the policy are undisputed, we independently consider whether LaBarbera qualified as a third party beneficiary. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866.) The intent of Security National and Knight--the parties to the contract--"is to be ascertained from the writing alone, if possible." (Civ. Code, § 1639.) This rule determines whether the contracting parties intended to benefit a third party, thereby conferring standing to enforce the contract's terms. (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524, citing Civ. Code, § 1639.)

B. *Analysis*

The parties do not appear to dispute that LaBarbera, as an indemnitee under the indemnitee defense clause, benefits from the clause. Rather, the dispute between the parties centers on whether LaBarbera is of a class of indemnitees that the indemnitee defense clause was intended to *directly* benefit, as LaBarbera contends, or whether LaBarbera is merely an incidental beneficiary to an agreement that the parties intended to benefit *Knight*, as Security National contends.

Security National argues that LaBarbera is not entitled to enforce the indemnity defense clause because the intent and purpose of the clause is to benefit the *insured*, Knight, not the indemnitee, LaBarbera, who is at best an incidental beneficiary of the clause. Security National first points to the insured contract exception, under which Security National agreed to pay for "damages" Knight "[a]ssumed in a contract or agreement that is an 'insured contract,' " such as the indemnity clause in Knight's and LaBarbera's contract. As we discussed *ante*, under the insured contract exception, defense costs incurred by a party other than the insured are treated as damages, and payment of such damages under the insured contract exception reduces indemnity limits

14

on all claims covered by the policy. In other words, were Security National to defend LaBarbera under the insured contract exception, those costs would be considered damages and would reduce the policy limit available to settle the underlying claim or pay an adverse judgment.

Conversely, the policy's "Supplementary Payments - Coverages A and B" provision includes the indemnitee defense clause, which generally "addresses payments that the insurer agrees to make to the insured," as opposed to any third party. (Bruner, et al., Bruner & O'Connor on Construction Law (2021) § 11:15.) Under the indemnitee defense clause, if Security National provides a joint defense to the insured and the indemnitee, the costs of the indemnitee's defense will not reduce the policy limits available to the insured to cover judgments or settlements. Accordingly, Security National contends that "the clause's express purpose is to preserve the insured's indemnity limit by treating the cost of the indemnitee's defense as part of the insurer's duty to defend the insured rather than as limits-reducing 'damages' under the insured-contract exception. The insured is thus the express intended beneficiary." (Italics omitted.)

LaBarbera acknowledges that the indemnitee defense clause benefits Knight, but he contends the plain language of the provision demonstrates that he, as the indemnitee, and Knight, as the insured, *both* directly benefit from the provision. LaBarbera points to the trial court's order, which concluded that, regardless of how the expenses of paying for the indemnitee's legal fees are characterized, the indemnitee defense clause expressly provides for the payment of the indemnitee's legal fees where certain conditions are met.

Neither party cites any California cases directly on point. Security National, however, cites several out-of-state cases that have interpreted indemnitee defense clauses; these cases have held that such clauses do *not* confer standing on a third party to assert a claim against the insurer. Security National's most persuasive case is *Berg v. Gulf Underwriters Ins. Co.*, 2008 WI App 121 [2008 Wisc. App. Lexis 513], where District

15

Four of the Wisconsin Courts of Appeal interpreted an indemnitee defense clause as follows:

"[W]e conclude the primary purpose of this [indemnitee defense] clause is to benefit both the insured and the insurer, and the indemnitee is only an incidental beneficiary. This clause applies only where the insured would be obligated under the insured [contract] to pay the indemnitee's cost of defense, as well as its liability; in that case, it is in the insured's interest to have the insurer pay for the indemnitee's defense without having that payment reduce payments from the insurer for the tort liability the insured has assumed; and it is in the insurer's interest to minimize its obligation with the efficiency of a combined defense where feasible and where agreeable to the insured. This clause thus delineates the conditions under which the insurer will make these supplementary payments.

"Notably, the insurer has no obligation to defend an indemnitee unless the insured and indemnitee both ask the insurer to defend the indemnitee and agree that the insurer can assign the same counsel. These conditions make it particularly clear that Gulf is not, in the words of the statute, 'undertak[ing] to give or to do . . . something directly to or for' Tenneco or any class of which it is a member. [Citation.] Instead, an indemnitee may incidentally benefit if all the conditions of this clause are met; and that depends on what the insured wants, within the defined limits of the clause, not on what the indemnitee wants. [¶] We conclude that, based on the insurance contract language, Tenneco is not a third-party beneficiary under the contract." (*Berg v. Gulf Underwriters Ins. Co., supra*, 2008 WI. App. 121 [2008 Wisc. App. Lexis 513, at pp. *22-*24, fn. omitted]; see also *Mulvey Const. v. Bitco Gen. Life Ins. Corp.* (S.D.W.Va. Oct. 22, 2015,

No. 1:07-0634) 2015 U.S. Dist. Lexis 143508, at pp. *24-*25 [indemnitee defense clause "is provided as a benefit for the insured, not a stranger to the insurance contract"].)[9]

Although we are not bound by *Berg*, we find its reasoning persuasive. As in *Berg*, here the indemnitee defense clause benefits both Security National and Knight. Where Knight is obligated to pay LaBarbera's liability and costs of defense pursuant to the insured contract, it is in Knight's interest to have his insurer, Security National, pay for LaBarbera's defense without having the costs of that defense reduce the policy limits. It is also in Security National's interest to minimize its obligation with the efficiency of a combined defense where feasible and where agreeable to the insured.

As the trial court recognized, and as LaBarbera argues on appeal, LaBarbera would also benefit from the indemnitee defense clause were Security National to pay the costs of his defense and liability. However, the issue before us is not whether LaBarbera would benefit from the indemnitee defense clause, but rather whether the indemnitee defense clause was *intended* to benefit *him*. We conclude it was not.

As we have discussed, the parties agreed to the indemnitee defense clause to benefit one another. Indeed, were Knight to determine that a joint defense did not benefit him, he would not be obliged to agree to a joint defense, and Security National would not have to provide one. Thus, the terms of the contract *do not* necessarily require Security National to confer a benefit onto LaBarbera--Knight must consent. (See *Prouty, supra*, 121 Cal.App.4th at p. 1225 [contract contemplates benefit to third person where contract necessarily requires promisor to confer benefit].) Thus, the intended benefit of the

---

[9] The other two cases cited by Security National are not directly on point; they hold only that the indemnitee defense clause does not make the indemnitee an *additional insured* under the policy, but do not address whether it makes the indemnitee a *third party beneficiary*. (See *Western Heritage Ins. Co. v. Century Surety Co.* (S.D.N.Y. 2014) 32 F.Supp.3d 443, 451-452; *Hargob Realty Associates, Inc. v. Fireman's Fund Ins. Co.* (N.Y. 2010) 73 A.D.3d 856, 858 [2010 N.Y. App. Div. Lexis 4058].) All agree LaBarbera was not an additional insured.

provision is not to LaBarbera--who would potentially benefit only if Knight were to agree to a joint defense--but rather to Knight and to Security National.

LaBarbera relies on *Prouty, supra*, 121 Cal.App.4th 1225, in which the appellate court concluded the plaintiffs were intended third party beneficiaries rather than merely incidental beneficiaries, but that case is distinguishable. In *Prouty*, GTG and Hewlett-Packard entered into a stock purchase agreement under which GTG agreed to buy from Hewlett-Packard all of the capital stock of its subsidiary, VeriFone, Inc. GTG and Hewlett-Packard initially agreed that GTG had no duty to continue any severance obligation Hewlett-Packard had provided its employees, although it agreed to indemnify Hewlett-Packard for any costs or expenses incurred as a result of terminating an employee after the closing on the stock sale purchase. The parties subsequently amended the agreement to add section 6, in which GTG agreed to not terminate any VeriFone employees within a specified time after the closing of the sale, and would pay severance benefits to terminated employees for a specified period of time thereafter. GTG agreed to indemnify Hewlett-Packard against any cost, expense, loss, or liability recovered by a third party, including any breach by GTG of its obligations set forth in section 6. (*Prouty*, at pp. 1227-1228.)

GTG terminated the plaintiffs' employment soon after closing on the sale. The plaintiffs, who were Hewlett-Packard employees assigned to the VeriFone Division, sued, arguing in part that GTG and Hewlett-Packard adopted a provision with the express intent to benefit them, thus making them third party beneficiaries. (*Prouty, supra*, 121 Cal.App.4th at p. 1232.) The court agreed; it concluded that the provision was "patently intended to preclude early termination of the affected employees . . . . The provision expressly benefits [the employees], and only them." *(Id.* at p. 1233.) The court observed that the provision had been amended into the agreement after the original agreement did not require GTG to provide any voluntary severance benefits to Hewlett-Packard employees. (*Ibid.*) The court noted that GTG "gained nothing from agreeing to

18

its terms." (*Ibid.*) Further, the court recognized that Hewlett-Packard was worried GTG would lay off its employees after closing and that those employees would not be treated as Hewlett-Packard would have treated them, and therefore the parties expressly agreed to provide the same severance package for those employees that Hewlett-Packard would have provided for them. (*Id.* at p. 1234.)

But here, as we have discussed, the indemnitee defense clause does not directly benefit LaBarbera, unlike the contractual provision in *Prouty* that protected the employees. Instead, the parties' intent in crafting the indemnitee defense clause here was to benefit Security National and Knight, with LaBarbera as an incidental beneficiary.

Additionally, were we to doubt that LaBarbera is a third party beneficiary of the indemnity defense clause, we would resolve any doubt against his position. (*Wexler, supra*, 63 Cal.App.5th at p. 66; *Rupley v. Huntsman, supra*, 159 Cal.App.2d at p. 312.) We thus affirm the decision granting Security National's motion for summary judgment, albeit on different grounds than the trial court.

## DISPOSITION

The judgment is affirmed. Security National shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

/s/
Duarte, Acting P. J.

We concur:

/s/
Renner, J.

/s/
Boulware Eurie, J.